

DA 12-0130

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 244

ROBERT JACOBSEN, and all others
similarly situated,

      Plaintiff and Appellee,

  v.

ALLSTATE INSURANCE COMPANY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                  In and For the County of Cascade, Cause No. ADV 03-201(D)
                  Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Robert H. King, Jr. (argued), SNR Denton US LLP, Chicago, Illinois
            Dennis Tighe; Paul R. Haffeman; Davis, Hatley, Haffeman & Tighe, P.C.,
            Great Falls, Montana

      For Appellee:

            Lawrence A. Anderson (argued), Attorney at Law, P.C., Great Falls,
            Montana
            Daniel P. Buckley, Buckley Law Office, P.C., Bozeman, Montana
            David J. Berardinelli, Berardinelli Law Firm, Santa Fe, New Mexico

      For Amici Curiae:

            Bradley J. Luck, Garlington, Lohn & Robinson, PLLP, Missoula, Montana
            Robin S. Conrad, National Chamber Litigation Center, Washington, D.C.
            Gene C. Schaerr, Winston & Strawn, LLP, Washington, D.C. (*Chamber of
            Commerce of the United States of America*)

            Amy Poehling Eddy, Bottomly Eddy & Sandle, PLLP, Kalispell, Montana,
            William F. Merlin, Jr., Merlin Law Group, P.A., Tampa, Florida

Leslie Anne Scalley, Attorney at Law, Tampa, Florida (*United Policyholders*)

_____

Argued: May 8, 2013
Submitted: May 15, 2013
Decided: August 29, 2013

Filed:

_____
Clerk

2

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    Defendant Allstate Insurance Company (Allstate) appeals the order of the Eighth Judicial District Court, Cascade County, granting Plaintiff Robert Jacobsen's (Jacobsen) motion for class certification. We affirm the class certification but modify the certified class relief on remand.

## ISSUES

¶2    We restate the issues on appeal as follows:

¶3    1. Whether the District Court abused its discretion by finding that the proposed class met the requirements of M. R. Civ. P. 23(a)?

¶4    2. Whether the District Court abused its discretion by certifying a M. R. Civ. P. 23(b)(2) class action lawsuit?

¶5    3. Whether the District Court erred by holding that the Montana Rules of Evidence do not apply to class action proceedings?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6    This interlocutory appeal arises from the District Court's order certifying a class in Jacobsen's class action against Allstate. Jacobsen's class action claim in turn arose out of our remand of his initial non-class third-party claim against Allstate in *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, 351 Mont. 464, 215 P.3d 649 (*Jacobsen I*). As we recounted in *Jacobsen I,* Jacobsen suffered bodily injuries and property damage in an automobile accident caused by Allstate's insured in 2001. Allstate admitted liability and negotiated a settlement with Jacobsen while he was unrepresented by counsel. Allstate's adjuster, Chuck Conners

3

(Conners) used Allstate's Claim Core Process Redesign (CCPR) program to process Jacobsen's claim. The CCPR is a system of claims adjusting guidelines that Allstate implemented in 1995 to fast track settlements and reduce the amount paid out on claims. Conners utilized the general outlines of the CCPR in settling Jacobsen's claim. The program facilitated a quick, unrepresented settlement six days after the accident for $3,500 and 45 days of "open" medical payment. As part of the settlement, Jacobsen signed a release.

¶7 Roughly three weeks later, Jacobsen began experiencing significant pain. Jacobsen contacted Conners and asked him to reconsider the release and provide additional assistance. Conners refused because Jacobsen had signed a release. Jacobsen retained counsel, who successfully persuaded Allstate to rescind the release and re-open Jacobsen's claim. Due to the efforts of Jacobsen's newly-hired attorney, Allstate settled Jacobsen's claim for $200,000 on November 27, 2002, roughly 18 months after his initial, unrepresented settlement for $3,500.

¶8 Thereafter, Jacobsen retained new counsel and filed a complaint against Allstate seeking compensatory damages for various violations of the Montana Unfair Trade Practices Act (UTPA), common law bad faith, intentional and negligent infliction of emotional distress (IIED and NIED respectively), and also seeking punitive damages pursuant to § 27-1-221, MCA. Jacobsen ultimately sought compensatory damages based on the attorney fees he incurred in pursuing his underlying claim and punitive damages based on Allstate's alleged malicious conduct.

4

¶9     The jury returned a verdict in favor of Jacobsen on October 19, 2006, finding Allstate liable for common law and statutory bad faith and awarding Jacobsen $68,372.38 in compensatory damages.  The jury specifically found that Allstate violated the UTPA by misrepresenting pertinent facts regarding the claim and neglecting to attempt in good faith to promptly, fairly, and equitably settle a claim in which liability was reasonably clear.  The jury also awarded Jacobsen $350,000 in punitive damages based on its finding that Allstate acted with actual malice.

¶10    Following the verdict, both Jacobsen and Allstate appealed various rulings by the District Court.  Our resolution of these appeals comprises *Jacobsen I*.  One issue under consideration in *Jacobsen I* concerned the discovery of what were termed the "McKinsey documents."  The McKinsey documents consist of around 12,500 PowerPoint slides produced by McKinsey & Company (McKinsey), a management consulting firm, for Allstate.  The CCPR program is a distillation of the studies and recommendations contained in the McKinsey documents, and they consequently provide a more complete-understanding of the program.  However, Jacobsen was unaware of the existence of the McKinsey documents at the time of his initial discovery request or motion to compel production of the CCPR.  When he became aware of them, Jacobsen sought leave of the court to assert new individual and class action claims against Allstate and to pursue additional discovery.  The District Court denied these requests, finding that they would "cause substantial prejudice and undue delay, burden, and expense[.]"  *Jacobsen I*, ¶ 55.

5

¶11 In his pre-remand appeal, Jacobsen argued that the District Court erred by denying his request for further discovery. We found that because "the issue before the District Court was not whether to re-open discovery, but whether to compel Allstate to produce documents that were within Jacobsen's original discovery request," it was "unnecessary to determine whether Jacobsen demonstrated due diligence or excusable neglect[.]" *Jacobsen I*, ¶ 57. We concluded "[t]he McKinsey documents were indeed critical to Jacobsen's theory that Allstate's policies regarding unrepresented claimants constituted bad faith" and reversed the District Court's decision. *Jacobsen I*, ¶ 58.

¶12 We ultimately remanded the case for a new trial, finding that the jury's award of compensatory damages could not be based solely on Jacobsen's incurred attorney costs and fees and that there could be no punitive damages following this reversal of the compensatory damages award. We also ordered the court to allow the jury to consider Jacobsen's emotional distress damages and directed the District Court to compel the production of the McKinsey documents. *Jacobsen I*, ¶ 67.

¶13 On remand, bolstered by the production of the McKinsey documents, Jacobsen filed a motion for leave to file a Fourth Amended Complaint that added class action claims concerning Allstate's CCPR program. Count Four of Jacobsen's Fourth Amended Complaint, filed May 6, 2010, contained the newly-added class action claims. Jacobsen based the class claims on his prior individual theories asserting violations of the UTPA[1] and

---

[1] Jacobsen specifically alleged Allstate's CCPR violated §§ 33-18-201(1) & (6), MCA. Section 33-18-201(1), MCA, prohibits misrepresenting "pertinent facts or

common law bad faith. Specifically, Count Four alleged that Allstate's CCPR program violated the UTPA "and/or common law bad faith laws" by intentionally misrepresenting that unrepresented claimants generally received more compensation than represented claimants and by settling unrepresented claims via an inadequate "fast track" component of the CCPR that resulted in unfair settlements. Count Four asserted these claims on behalf of "all unrepresented individuals who had either third party claims or first party claims against Allstate whose claims were adjusted by Allstate in Montana using its CCPR program."

¶14 Count Five presented a claim for a common fund recovery of attorney fees incurred in pursuing the class action, and Count Six presented a claim for attorney fees as a "Private Attorney General" by asserting that the State of Montana had failed to enforce §§ 33-18-201(1) and (6), MCA. Regarding class relief, Jacobsen requested class certification, injunctive relief prohibiting Allstate from using the CCPR program in Montana, an injunction requiring Allstate to "re-open all claims in which liability was reasonable [sic] clear in which the Defendant applied the CCPR paradigm in settling such cases," an injunction requiring Allstate to disgorge unlawful profits, the award of punitive damages, and attorney fees.

¶15 Jacobsen filed a motion for class certification on May 7, 2010, proposing a class definition encompassing "all unrepresented individuals who had either third-party claims or

---

insurance policy provisions relating to coverages at issue." Section 33-18-201(6) prohibits neglecting "to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."

first-party claims against Allstate whose claims were adjusted by Allstate in Montana using its CCPR program."

¶16 The District Court certified a Rule 23(b)(2) class in its methodical June 30, 2012 Order. In the course of its analysis, the Court noted the United States Supreme Court's admonition in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011), to conduct a "rigorous" Rule 23 analysis. The Court also construed the substantive essence of Plaintiff's asserted class claim to be, irrespective of individual outcomes, that the CCPR's settlement practices "constitute a common pattern and practice in violation of §§ 33-18-201(1) and (6), MCA, as generally applied to the class as a whole, thereby resulting in indivisible harm to the class as a whole . . . ." The court accordingly certified the following class claim:

> (A) the Casualty CCPR's unrepresented segment adjusting practices are a common pattern and practice in violation of §§ 33-18-201(1) and (6), MCA, as generally applied to the class of unrepresented claimants as a whole;
>
> (B) Allstate's common, systematic use of this pattern and practice in Montana caused indivisible harm to the class as a whole by operation of its zero-sum economic theory and the resulting inversely proportional relationship between Allstate profit increases and corresponding decreases in the total amount of compensation paid to the class of unrepresented claimants as a whole; and
>
> (C) Allstate acted with "actual malice," as defined by § 27-1-221(2), MCA, by intentionally, deliberately, and consciously creating and disregarding a high probability that the net effect of its Casualty CCPR's unrepresented segment practices would result in net settlement payouts to the class as a whole less than the net amount previously sufficient to fully and fairly settle unrepresented claims under Montana law[.]

As support, the Court found that Jacobsen had proffered "substantial credible evidence" that Allstate systematically adjusted unrepresented first and third-party claims involving bodily

8

injury or property damage "in the same general manner" under the CCPR program. The Court thus rejected Allstate's claim that Jacobsen could not establish that all unrepresented claimant's settlements were unfair by reasoning that Jacobsen's claims concerned the "preliminary manner, means, and course of adjustment systematically applied to the class as a whole in the context of the insurer's duties under §§ 33-18-201(1) and (6), MCA," and not the "ultimate outcomes" of individual claims.

¶17  The Court restructured Jacobsen's class definition as follows:

> (1) all unrepresented claimants who made first-party or third-party claims to Allstate;
> (2) for an amount in excess of the applicable policy deductible;
> (3) for bodily injury or property damage related to an underlying motor vehicle incident or occurrence; and
> (4) whose claims were adjusted by Allstate in Montana to an unrepresented settlement since deployment in Montana of the various versions of the Casualty CCPR (*CCPR Implementation Manual (Tort States))*.

The Court considered this reformed definition to be "sufficiently precise and homogenous for purposes of Rule 23." Using this reformed class definition the Court determined that Jacobsen's class claim satisfied Rule 23(a)'s four prerequisites—numerosity, commonality, typicality, and adequacy. The Court certified Jacobsen's claim as a Rule 23(b)(2) class action and certified the following class action remedies as available upon proof of the certified class claim:

> (A) [a] declaratory judgment adjudicating the constituent assertions of the certified class claim [which we have recounted in ¶ 16];
>
> (B) [a] mandatory injunction requiring Allstate to:

9

(1) give all class members court-appointed notice of the right and opportunity to obtain re-opening and re-adjustment of their individual claims by timely returning a proof of claim form; and

(2) re-open and re-adjust each individual claim upon receipt of a timely filed proof of claim;

(C) class-wide punitive damages pursuant to §§ 27-1-220 and 27-1-221(2), MCA (actual malice), predicated on the above-referenced class-wide conduct; and

(D) common fund recovery of class action attorney fees and costs upon a class-wide punitive damages award[.]

Allstate appeals the court's certification of Jacobsen's class claims pursuant to Rule 23[2] as well as the court's consideration of what Allstate argues was inadmissible evidence during the certification proceedings.

***Allstate's CCPR Program and the McKinsey Documents.***

¶18    Due to Jacobsen's contention that Allstate's application of the CCPR program to unrepresented claimants amounts to statutory and common law bad faith, a brief summary of the program, and the related McKinsey documents, is in order.

¶19    Allstate hired McKinsey in the early 1990's to help redesign its claims process. This redesign was prompted by Allstate's recognition that while claims expenses were low, total payouts were increasing at a pace above the industry average. The McKinsey documents outlined a claim settlement process, like the CCPR program, to lower claims payouts by increasing claimant contact and reducing attorney involvement. McKinsey essentially

---

[2] A more thorough analysis of the District Court's application of Rule 23(a) and (b) will be provided in the course of our legal discussion.

advocated "increasing the number of early unrepresented settlements" while "holding the line" on represented claims. This focus flowed from research showing that represented claims settled for 2-3 times more than unrepresented claims, that Allstate claims adjusters were not effectively initiating early contact or communicating with claimants, and that this failure to promptly and effectively communicate with claimants made claimants more likely to hire lawyers. The McKinsey documents ultimately styled claims adjusting as a "zero sum" economic game where if Allstate gains by reducing settlements, others—including "medical providers, plaintiff attorneys, and claimants"—"must lose."

¶20     Allstate's CCPR program consequently strives to reduce overall claims payouts by establishing a more centralized, regimented claims adjusting process focused on quick claimant contact, building rapport, reducing claimant representation rates, and shuttling certain claims into a "fast track" system. Allstate applies the CCPR to both third and first-party claimants.

¶21     Here, Allstate's adjuster, Conners, utilized the CCPR program to obtain a fast track, unrepresented, reduced payment settlement of Jacobsen's claim. Jacobsen alleges that the CCPR program systematically violates the rights of unrepresented claimants as provided to them by the UTPA. Jacobsen specifically takes issue with the application of the CCRP's "fast track" system, "9-step process," and "attorney economics script" to his claim.

¶22     First, the "fast track" system seeks to promote settlement with claimants within 12 days of the accident. Jacobsen alleges that the system promotes quick settlements at the expense of fair settlements. A "Fast Track Evaluation Worksheet" controls whether a claim

11

is amenable to "fast track" processing and requires: the claimant is unrepresented, there are no coverage questions, there are only soft tissue injuries and a good prognosis, no residuals, no aggravation of preexisting conditions, and treatment for less than 60 days. In this case, after Jacobsen accepted the initial $3,500 settlement, Conners processed Jacobsen's claim under the CCPR's "fast track" guidelines for unrepresented claims.

¶23 Second, Conners generally utilized the "9-step process" for unrepresented claimant contact. The CCPR's Initial Claimant Contact Outline for unrepresented claimants directs adjusters to: (1) establish empathy and gather injury facts; (2) confirm Allstate's customer service pledge; (3) gather loss facts; (4) confirm Allstate's liability decision; (5) discuss payment of medical bills and lost wages; (6) assist with car repairs; (7) assist with alternate transportation; (8) explain the bodily injury settlement process and discuss attorney economics; and (9) close the claim and follow-up. Jacobsen alleges the 9-step process increases Allstate's profits at the expense of good faith settlements.

¶24 Third, in accordance with the CCPR, Conners discussed attorney economics with Jacobsen. The CCPR process explicitly seeks to reduce the number of represented claims to reduce claims payouts. This goal was motivated by Allstate's determination that represented claimants typically settled for 2-3 times (and perhaps up to 5 times) the amount unrepresented claimants received. To reduce attorney involvement, the CCPR aims to build rapport with claimants though quick, empathetic contact, and directs adjusters to utilize an "attorney economics script." The script states:

[q]uite often our customers ask if an attorney is necessary to settle a claim. Some people choose to hire an attorney, but we would really like the opportunity to work directly with you to settle the claim.

Attorneys commonly take between 25-40% of the total settlement you receive . . . plus expenses incurred. If you settle directly with Allstate, however, the total amount of the settlement is yours.

At any time in the process you may choose to hire an attorney. I would, however, like to make an offer to you first. This way, should you go to an attorney, you would be able to negotiate with the attorney so his/her fees would only apply to amounts over my offer to you.

The script's instructions counsel against improperly dissuading claimants from seeking representation and instruct adjusters to remind claimants that they are free to hire an attorney at any time and discuss the relevant statute of limitations. However, the script does not contain information advising that Allstate found that represented claimants generally received higher settlements. Jacobsen alleges Allstate's portrayal of "attorney economics" induced him into believing unrepresented claimants generally received more compensation for injuries and resulted in an initially unfair settlement.

## STANDARD OF REVIEW

¶25 We afford trial courts the broadest discretion when reviewing a decision on class certification. *Sieglock v. Burlington Northern & Santa Fe Ry. Co.*, 2003 MT 355, ¶ 8, 319 Mont. 8, 81 P.3d 495. This is because the trial court "is in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Chipman v. Northwest Healthcare Corp.*, 2012 MT 242, ¶ 17, 366 Mont. 450, 288 P.3d 193. We will

13

therefore not upset the District Court's decision without finding an abuse of discretion. In conducting this review we do not ask whether we would have reached the same decision, but instead ask whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason. *Newman v. Lichfield*, 2012 MT 47, ¶ 22, 364 Mont. 243, 272 P.3d 625. However, ' "[t]o the extent that the ruling on a Rule 23 requirement is supported by a finding of fact, that finding, like any other finding of fact, is reviewed under the 'clearly erroneous' standard. And to the extent that the ruling involves an issue of law, review is *de novo*." ' *Mattson v. Mont. Power Co.*, 2012 MT 318, ¶ 17, 368 Mont. 1, 291 P.3d 1209 (*Mattson III*) (quoting *Miles v. Merrill Lynch & Co.*, 471 F.3d 24, 40-41 (2d Cir. 2006)).

## DISCUSSION

¶26 *1. Whether the District Court abused its discretion by finding that the proposed class met the requirements of M. R. Civ. P. 23(a)?*

### A. Rule 23(a)

¶27 Initially, a class action claim is " 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " *Mattson III*, ¶ 18 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S. Ct. 2545 (1979)). Departure

14

from the usual rule is justified if the class representative is part of the class and possesses the same interest and suffers the same injury as the class members. *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S. Ct. 1891 (1977). In this way, class action suits save the resources of courts and parties " 'by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.' " *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155, 102 S. Ct. 2364 (1982) (quoting *Califano*, 442 U.S. at 701).

¶28 Rule 23 of the Montana Rules of Civil Procedure governs certification of a class action and ensures that the named plaintiffs are appropriate representatives of the class. Because the Montana version of Rule 23 is identical to the corresponding federal rule, federal authority is instructive, but Montana courts are not required to march lockstep with federal interpretations of Fed. R. Civ. P. 23. *Chipman,* ¶ 43. The four requirements found in Rule 23(a) provide the threshold inquiry courts engage in when considering a putative class. Specifically, Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

These prerequisites are intended to protect the due process rights of absent class members, *Hansberry v. Lee*, 311 U.S. 32, 42-43, 61 S. Ct. 115 (1940), and failure to establish any element of Rule 23(a) is fatal to class certification. *Chipman*, ¶ 43.

15

¶29    Moreover, we have recently adopted the following guidelines in an attempt to provide

further clarification of Rule 23's proper standard of review:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

*Mattson v. Mont. Power Co.*, 2009 MT 286, ¶ 67, 352 Mont. 212, 215 P.3d 675 (*Matson II*).

Our application of these guidelines to the District Court's certification order in this case

leads us to the conclusion that the District Court did not abuse its discretion by certifying

Jacobsen's proposed class.  The District Court based its class certification on a meticulous

review of the evidence behind the pleadings.  As class certification requires that the plaintiff

satisfy all four requirements of Rule 23(a), we will address each requirement in turn.

### i.  Numerosity—Rule 23(a)(1)

¶30    As noted, Rule 23(a)(1) requires that the proposed class be "so numerous that joinder

of all members is impracticable."  Here, the Court found that Jacobsen, using the deposition

of Allstate Agent Conners, "reasonably estimated the size of the first proposed class [in

*Jacobsen I*] at around 600 members."  Because Jacobsen had enlarged the class post-remand

16

by adding first-party claimants and automobile-related property damage claims, the Court concluded that the post-remand class met Rule 23(a)(1)'s numerosity requirement. Allstate does not challenge this conclusion on appeal.

### ii. Commonality—Rule 23(a)(2)

¶31 Allstate does contest the Court's finding that the proposed class satisfied the commonality requirement of Rule 23(a)(2). Rule 23(a)(2) requires "questions of law or fact common to the class." Because the requirements of the rule are disjunctive, a party seeking class certification must have either common questions of law or fact, and total commonality is not required. *Sieglock*, ¶ 11. The commonality requirement has therefore generally been seen as a relatively low burden for plaintiffs. *See Diaz v. Blue Cross & Blue Shield*, 2011 MT 322, ¶ 32, 363 Mont. 151, 267 P.3d 756 (quoting *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 667-68 (S.D.Ala. 2005)) (commonality requirement is met when a single issue is common to all class members); *Ferguson v. Safeco Ins. Co. of Am.*, 2009 MT 109, ¶ 26, 342 Mont. 380, 180 P.3d 1164 (citing *LaBauve*, 231 F.R.D. at 668) (commonality "is not a stringent threshold and does not impose an unwieldy burden on plaintiffs."); *McDonald v. Washington*, 261 Mont. 392, 401, 862 P.2d 1150 (quoting *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320 (9th Cir. 1982)).

¶32 As these cases indicate, we have a "long history of relying on federal jurisprudence when interpreting the class certification requirements of Rule 23." *Chipman*, ¶ 52. Federal Rule 23(a)(2) jurisprudence was further developed in 2011 by the U.S. Supreme Court in *Wal-Mart v. Dukes*. The *Wal-Mart* decision has raised the dual questions of whether it plots

17

a new course for "commonality" analysis and if this course materially differs from our own. We first considered *Wal-Mart*'s treatment of Rule 23(a)(2) in *Chipman*. There, we recognized that the *Wal-Mart* decision had departed from our heretofore "minimal standard" and had "significantly tightened the commonality requirement." *Chipman*, ¶¶ 47-48. We then applied the *Wal-Mart* decision's "reasoning" concerning Rule 23(a)(2) and upheld the class certification order. *Chipman*, ¶¶ 47, 52. We next considered Rule 23(a)(2) and *Wal-Mart* two months later in our *Mattson III* decision. There, we again referenced the Supreme Court's apparent tightening of Federal Rule 23(a)(2)'s requirements and noted "a recent divergence between the federal approach and Montana's approach to the commonality requirement." *Mattson III*, ¶ 35. However, despite our application of *Wal-Mart's* "reasoning" in *Chipman*, the *Mattson III* decision portrayed our decision to follow *Wal-Mart*'s interpretation of Rule 23(a)(2) as an open question best left for some "future case." *Mattson III*, ¶ 37. Despite disclaiming our adoption of *Wal-Mart*'s commonality reasoning, *Mattson III* still analyzed, and upheld, the District Court's class certification pursuant to the supposedly "more stringent" federal standard. *Mattson III*, ¶ 37.

¶33     As Justice Baker observed in her dissenting opinion in *Mattson III*, our varying embrace of *Wal-Mart* in *Chipman* and *Mattson III* perhaps "introduce[d] confusion into our class certification standards . . . ." *Mattson III*, ¶ 45 (J. Baker, dissenting). Our opinion in *Mattson III* recognized this, and we determined that "[i]t may be necessary in a future case— where the issue is properly briefed and argued, and the choice of one standard over the other is dispositive of the commonality inquiry—to decide whether Montana will retain its more

18

permissive approach or instead adopt the *Wal-Mart* majority's approach." *Mattson III*, ¶ 37.

This, however, is not that future case. Neither Jacobsen's nor Allstate's arguments hinge on the potential differences between *Wal-Mart*'s and Montana's approaches to commonality. Moreover, the District Court applied *Wal-Mart* in its order certifying the class. Because we affirm the District Court's certification of the class decision under *Wal-Mart*, the choice of one standard over the other is not dispositive. We therefore need not decide whether Montana will retain its approach to commonality or how these approaches differ, and we will proceed with a discussion of Jacobsen's proposed class in the context of *Wal-Mart*.

### a. *Wal-Mart* and F. R. Civ. P. 23(a)

¶34    In *Wal-Mart*, the U.S. Supreme Court considered a proposed class of 1.5 million current and former female Wal-Mart employees "who [alleged] that the company discriminated against them on the basis of their sex by denying them equal pay or promotions ...." *Wal-Mart*, 131 S. Ct. at 2547.[3] There, as here, the Court dealt with the requirements of the identical Federal Rule 23(a)(2). To satisfy the commonality requirement, the plaintiffs had proffered statistical evidence about pay and promotion

---

[3] We must note that the unusual size of the *Wal-Mart* class presented unique challenges that may make the case inapposite to the classes generally proposed in Montana. *See Mattson III*, ¶ 20 (at least 3,000 class members); *Pallister v. Blue Cross & Blue Shield of Mont., Inc.*, 2012 MT 198, ¶ 7, 366 Mont. 175, 285 P.3d 562 (3,000 class members); *Chipman*, ¶ 46 (1,254 class members); *Diaz*, ¶ 31 ("hundreds" of class members); *Gonzales v. Mont. Power Co.*, 2010 MT 117, ¶ 6, 356 Mont. 351, 233 P.3d 328 (117 class members); *Ferguson*, ¶ 39 ("at least" 239 class members); *McDonald*, 261 Mont. at 400, 863 P.2d at 1155 (35,360 individual class members). The unique need in *Wal-Mart* to find some sort of common contention that would bind 1.5 million disparate individuals prompted a level of skepticism towards class certification that would likely never arise in Montana.

disparities between genders, anecdotal reports of discrimination from female employees, and the expert testimony of a sociologist. The District Court reviewed this evidence and certified the proposed class. *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 145, 2004 U.S. Dist. LEXIS 11297 (N.D. Cal. 2004). In the course of its Rule 23(a) analysis, the District Court noted that "the party seeking certification must provide certain facts sufficient to satisfy Rule 23(a)," that "the court's analysis [of Rule 23] must be rigorous," and that " 'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " *Dukes*, 222 F.R.D. at 143-44. Wal-Mart opposed the commonality finding largely by advancing the unique nature of individual stores and its practice of giving local managers substantial discretion in pay and promotion decisions. *Dukes*, 222 F.R.D. at 151.

¶35    Wal-Mart appealed the class certification, contesting, *inter alia*, the District Court's conclusion that the class met the commonality requirement. The Ninth Circuit affirmed after granting a re-hearing en banc. *See Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010). Wal-Mart again appealed and the U.S. Supreme Court granted certiorari, issuing its opinion in 2011. The majority considered the decision on commonality to be the "crux" of the case and engaged in an analysis of Federal Rule 23(a)(2)'s requirements. The Court attempted to clarify the application of Rule 23(a)(2)'s language and establish the proper standard of Rule 23(a)(2) adjudication. For our purposes, this clarification produced two important holdings, the first concerning the sufficiency of a plaintiff's common contentions

20

and the second regarding the proper, "rigorous" level of Rule 23(a) analysis. We will examine these clarifications in turn.

¶36    First, the majority cautioned that the language of the commonality rule is "easy to misread, since '[a]ny competently crafted class complaint literally raises common 'questions.' '" *Wal-Mart*, 131 S. Ct. at 2551 (citation omitted). Thus, the majority sought to clarify *what sort* of common questions of law or fact satisfy Rule 23(a)(2). The majority emphasized that plaintiffs may not merely raise droves of superficial common questions (providing "Do all of us plaintiffs indeed work for Wal-Mart?" as an example). Instead, the plaintiffs' common legal or factual contentions must "demonstrate that the class members 'have suffered the same injury' " by asserting a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.[4] This emphasis logically flows from the Court's prior justification of the class-action device's departure from the usual rule of individual litigation: "permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Falcon*, 457 U.S. at 155 (quoting *Califano*, 442 U.S. at 700-01).

¶37    Second, the Supreme Court sought to clarify what it saw as an inconsistent, and inadequate, level of Rule 23(a) review in the lower federal courts. In doing so, the *Wal-Mart* decision embraced what has been termed a "rigorous" form of Rule 23(a) analysis. A

---

[4]    It should be noted that the majority retained the permissive recognition that "for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Wal-Mart*, 131

21

"rigorous" level of Rule 23(a) analysis was previously adopted by a majority of the federal Circuit Courts, and the "more rigorous" approach adopted by the Second, Fourth, Fifth, Seventh, and Ninth Circuits requires district courts to make specific findings that each requirement of Rule 23(a) has *actually*, not presumably, been met. *Dukes,* 603 F.3d at 583. The *Wal-Mart* decision adopted the "more rigorous" approach, as district courts may certify a class "only if" they are satisfied that the prerequisites of Rule 23(a) have actually been satisfied. *Wal-Mart*, 131 S. Ct. at 2551. Further, in the course of making the required determination that Rule 23(a) has actually been satisfied, " 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.' " *Wal-Mart,* 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 160). Thus, to the *Wal-Mart* majority, a proper "rigorous" Rule 23(a) analysis specifically requires that the district court determine each requirement of Rule 23(a) has been actually met and allows, *but does not require*, the district court to probe beyond the pleadings and touch aspects of the merits to make this determination. *See Wal-Mart*, 131 S. Ct. at 2551.

¶38　　The *Wal-Mart* majority's application of the clarified commonality requirement provides some further insight into its Rule 23(a)(2) analysis. Because the plaintiffs' class action alleged a company-wide policy of gender discrimination in violation of Title VII, the Supreme Court recognized that "proof of commonality necessarily overlaps with respondents' merits contentions that Wal-Mart engages in a *pattern or practice* of discrimination." *Wal-Mart*, 131 S. Ct. at 2552. The majority viewed the size of the class

S. Ct. at 2556.

and disparate nature of Wal-Mart's employment decisions as particular problems, and determined that "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial questions *why was I disfavored*." *Wal-Mart*, 131 S. Ct. at 2552. To provide this glue, the majority required the plaintiffs to *prove* that a company-wide policy existed. The majority accordingly reviewed the plaintiffs' proffered evidence and concluded that it could not prove that a company-wide policy existed. *Wal-Mart*, 131 S. Ct. at 2553-57. Thus, the Supreme Court probed beyond the pleadings to determine a merits issue—whether Wal-Mart even *had* a company-wide pay or promotion policy—to determine if the plaintiffs could present a common contention amenable to classwide resolution. Unlike the present case, because the plaintiffs could not prove a uniform plan or policy, they could not present the question of whether they, and the proposed class members, had suffered a common injury as a result.[5]

---

[5] Moreover, the U.S. Supreme Court recently rejected the propriety of a merits inquiry at the class certification stage for a Rule 23(b)(3) class. The case, *Amgen Inc., et al. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013), involved a securities fraud Rule 23(b)(3) class action. To prove securities fraud and recover damages under § 10(b) of the Securities Exchange Act of 1934, a plaintiff must prove, *inter alia*, a material misrepresentation or omission by the defendant. *Matrixx Initiatives, Inc. v. Siracusano*, 568 U.S. __, __, 131 S. Ct. 1309, 1317 (2011). Materiality is key in a § 10(b) class action suit because it is an essential predicate for the fraud-on-the-market theory that supports the presumption of "classwide reliance on those misrepresentations and omissions through the information-processing mechanism of the market price." *Amgen*, 568 U.S. at __, 133 S. Ct. at 1194. Without this presumption, the plaintiffs could not prove that the class as a whole relied on the misrepresentation and present a common question suitable for Rule 23(b)(3). However, the Supreme Court held that proof that a defendant's misrepresentations or omissions materially affected their stock price was not required at the Rule 23(b)(3) class certification stage. *Amgen*, 563 U.S. at __, 2013 LEXIS at 8. While *Wal-Mart* recognized that courts may intrude on merits issues, like materiality, to certify a class, the *Amgen* majority held that Rule 23(b)(3) "requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at __, 2013 LEXIS at 8. As the *Amgen* decision emphasized, "the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it

23

### b. Jacobsen's Proposed Class and the District Court's Rule 23(a)(2) Decision

¶39 Here, the District Court applied the *Wal-Mart* decision's reasoning that the asserted class claim must depend upon a common contention that will resolve an issue that is central to the validity of each member's claim. In applying this standard, the District Court looked beyond the allegations of Jacobsen's pleadings to find: (1) that Jacobsen had produced "significant proof" that Allstate intentionally and systematically failed to disclose that represented claimants received settlements 2-3 times larger than unrepresented claimants; (2) that Allstate developed the CCPR with the intent that it would reduce the net sum of unrepresented settlements; (3) that Allstate hid this profit motive by developing the facially neutral CCPR; (4) that Allstate consciously disregarded a high probability that the net effect of the CCPR would result in less than a full and fair settlement; and (5) that the CCPR program had resulted in "a substantial, objectively measurable reduction in the total amount of compensation paid to the class of unrepresented claimants as a whole . . . ." The Court concluded that these factual showings united Jacobsen and the class member's claims and supported the following common questions of law and fact, asking whether:

> (1) the Casualty CCPR's unrepresented segment adjusting practices are a common pattern and practice in violation of §§ 33-18-201(1) and (6), MCA, as generally applied to the class of unrepresented claimants as a whole;

---

is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.' " *Amgen*, 568 U.S. at __, 133 S. Ct. at 1191. *Amgen* accordingly supports our recognition that the focus of the class action device is the fair and efficient adjudication of common claims. Further, both *Amgen* and *Wal-Mart* dealt with questions concerning what sort of merits inquiry was appropriate. The *Amgen* decision limited merits inquiries in the context of a Rule 23(b)(3) securities fraud claim, supporting the view that *Wal-Mart*'s more-skeptical level of Rule 23 analysis is not universally applicable.

24

(2) Allstate's common, systematic use of this pattern and practice in Montana caused indivisible harm to the class as a whole by operation of its zero-sum economic theory and the resulting inversely proportional relationship between

Allstate profit increases and corresponding decreases in the total amount of compensation paid to the class of [sic] as a whole; and[6]

(3) Allstate has consciously disregarded a high probability that the net effect of its Casualty CCPR's unrepresented segment practices would result in net settlement payouts to the class as a whole less than the net amount previously sufficient to fully and fair[ly] settle unrepresented claims under Montana law.

Despite potential factual disputes, the Court determined that Jacobsen's proposed class action would provide the sort of "common answers" concerning the CCPR program that *Wal-Mart* encouraged. *See Wal-Mart*, 131 S. Ct. at 2551. Indeed, because the presence of a common pattern and practice is undisputed, Jacobsen's common contentions do not suffer from the same defect as did the plaintiffs' contentions in *Wal-Mart*.

¶40 On appeal, Allstate first argues that because Jacobsen's claim is not predicated upon an assertion that his third-party bodily injury or property damage claims were ultimately settled unfairly or underpaid, there is no commonality between his claim and the alleged class claims. However, this argument misses the thrust of Jacobsen's class claim on remand. While Jacobsen's requested relief and alleged bases for damages are not entirely clear, the District Court determined that his claim asserts, in part, that Allstate's application of the CCPR to unrepresented claims is a per se violation of the UTPA and results in actual harm in

---

[6] As discussed below, however, we believe it is necessary to revise the second certified class claim in light of our holding reversing the certification of a class-wide punitive damages award.

the form of an alleged zero-sum economic plan systematically reducing claims payments to increase profits. This contention does not merely allege that the proposed class members suffered a violation of the same provision of law "in many ways." *See Wal-Mart*, 131 S. Ct. at 2551. Here, the presence of a "general business practice," the CCPR, is undisputed. Whether this general practice, as applied to unrepresented claimants, violates §§ 33-18-201(1) or (6), MCA, is just the sort of question that may efficiently drive the resolution of the litigation. *See Wal-Mart*, 131 S. Ct. at 2551 (commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury."). This determination would not turn on the countless discretionary decisions that troubled the *Wal-Mart* majority, and would not be hampered by a variety of unique defenses and circumstances. Jacobsen's assertion that the CCPR, as applied to the class members, represents a per se violation of the UTPA would resolve a necessary, central question applicable to all class members.

¶41     Judge Richard Posner's treatment of the Rule 23(b)(2) class certification at issue in *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir. 2012) supports this conclusion. There, plaintiffs filed a class action suit alleging that Merrill Lynch engaged in a system of racial discrimination by utilizing a company policy that allowed brokers to form teams and that then rewarded team performance with increased broker account distributions. *McReynolds*, 672 F.3d at 483, 489-90.[7] The plaintiffs asked that the

---

[7] Essentially, the plaintiffs contended that the teams were "little fraternities" that, intentionally or not, chose members largely from similar racial groups. *McReynolds*, 672 F.3d at 489. Brokers did not have to join teams, but being accepted by a successful team generally increased performance. Account distributions were made when a broker left Merrill Lynch to distribute his clients' accounts and they were based on the past success of the brokers. Thus, if a broker wasn't selected by a successful team, he may miss out on future

class be certified to determine whether the defendant had engaged in discriminatory practices and to provide injunctive relief. The plaintiffs also wanted compensatory and punitive damages. *McReynolds*, 672 F.3d at 483. The district court denied class certification and the plaintiffs appealed. On appeal, Judge Posner considered the denied certification in the context of *Wal-Mart*. *McReynolds*, 672 F.3d at 488. Judge Posner found that, unlike the *Wal-Mart* plaintiffs, Merrill Lynch's policies were an employment decision by the top management that was appropriate for a class-wide determination as to whether the challenged policies had a disparate racial impact. *McReynolds*, 672 F.3d at 489.

¶42   Judge Posner reversed the district court's denial of class certification despite his recognition that a final resolution of the class's claims would require hundreds of separate trials to determine compensatory and punitive damages. As Judge Posner noted,

> [o]bviously a single proceeding, while it might result in an injunction, could not resolve class members' claims. Each class member would have to prove that his compensation had been adversely affected by the corporate policies, and by how much. So should the claim of disparate impact prevail in the class-wide proceeding, hundreds of separate trials may be necessary to determine which class members were actually adversely affected by one or both of the practices and if so what loss he sustained—and remember that the class has 700 members. *But at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful*.

*McReynolds*, 672 F.3d at 490-91 (emphasis added). To Judge Posner, "[t]he kicker is whether 'the accuracy of the resolution' would be 'unlikely to be enhanced by repeated

---

account distributions, which would cause him to not be selected by the successful teams, and a vicious cycle could ensue. The plaintiffs argued that minority brokers at Merrill Lynch found it hard to join good teams "and as a result don't generate as much revenue or attract and retain as many clients as white brokers do." *McReynolds*, 672 F.3d at 490.

27

proceedings.' " *McReynolds*, 672 F.3d at 491.  As the Seventh Circuit previously said in *Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910 (7th Cir. 2003),

> If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings.

*Mejdrech*, 319 F.3d at 911.  A single class trial for injunctive relief that determines the legality of a commonly applied procedure or policy is not only economical and attractive, but, in the alternative, "[t]here isn't any feasible method . . . for withholding injunctive relief until a series of separate injunctive actions has yielded a consensus for or against the plaintiffs." *McReynolds*, 672 F.3d at 491; *see also Wal-Mart*, 131 S.Ct at 2557 ("[T]he key to the (b)(2) class is the, indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them,").

¶43     Regarding the class's requested monetary relief, Judge Posner recognized "there may be no common issues," and determined "in that event the next stage of the litigation, should the class-wide issue be resolved in favor of the plaintiffs, will be hundreds of separate suits for backpay (or conceivably for compensatory damages and even punitive damages as well . . . .)." *McReynolds*, 672 F.3d at 492.  The Court approved of this bifurcated approach, determining declaratory and injunctive relief in a class trial and individual monetary relief in later individual trials, because "the lawsuits will be more complex if, until issue or claim preclusion sets in, the question whether Merrill Lynch has violated the antidiscrimination

28

statutes must be determined anew in each case." *McReynolds*, 672 F.3d at 492. As the D.C. Circuit recently noted, "[t]he pututative [sic] class in *McReynolds* was appropriate post-*Wal-Mart* because the economic harm alleged by each class member was the result of the same corporate-wide policies and if the policies were held unlawful then a question central to the validity of each class member's claim would be resolved in one stroke." *DL v. District of Columbia*, 713 F.3d 120, __, 2013 U.S. App. LEXIS 7375, 22 (D.C. Cir. 2013). This recognition aligns with the *Wal-Mart* majority's interest in certifying classes that will drive the resolution of litigation and it supports affirming the certification of Jacobsen's class to determine the certified declaratory and injunctive relief. *See Ferguson*, ¶ 28 (finding a common fact issue existed concerning whether Safeco programmatically breached insured's made whole rights); *McDonald*, 261 Mont. at 401 (concluding that commonality was satisfied, despite class members living in different areas with different water sources, because the common theory was that the defendant breached a duty owed to all class members); M. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."); *see also Williams v. Mohawk Indus.*, 568 F.3d 1350, 1360 (11th Cir. 2009) (" 'Since in theory there should be no hard requirement that (b)(2) be mutually exclusive, and since subpart (c)(4)(A) allows an action to be maintained 'with respect to particular issues,' the fact that damages are sought as well as an injunction or declaratory relief should not be fatal to a request for a (b)(2) suit, as long as the resulting hybrid case can be fairly and effectively managed.' ").

¶44 Indeed, federal courts applying *Wal-Mart*'s commonality analysis have focused on the presence of just this sort of common contention alleging that a defendant's programmatic conduct violates the law. *See DL*, 713 F.3d at 127 (vacating class certification after *Wal-Mart* because "the district court identified no single or uniform policy or practices that bridges all [the putative class members'] claims."); *Wang v. Chinese Daily News*, 709 F.3d 829, 834 (9th Cir. 2013) (vacating and remanding class certification following *Wal-Mart* and requiring that the plaintiff show "significant proof that [the defendant] operated under a general policy of [violating California labor laws]" to satisfy commonality); *Forte v. Wal-Mart Stores, Inc.*, 2012 Dist. LEXIS 97435 5-6 (S.D. Tex.) (noting that if the lease agreement provision plaintiffs were contesting was a per se violation of the Texas Optometry Act, "commonality would be met."); *Khaliel v. Norton Health Care, Inc.*, 287 F.R.D. 511, 517 (W.D. Ky. 2012) (affirming class certification post-*Wal-Mart* where "it is the appropriateness of that [employment benefit calculation] methodology that will be determined when the court reaches the merits of the case, and such a question is indeed 'capable of classwide resolution'. . . and does not turn on the validity of countless individual discretionary decisions."); *Kingsbury v. U.S. Greenfiber, LLC*, 2012 U.S. Dist. LEXIS 94854, 18-19 (C.D. Ca.) (concluding *Wal-Mart* did not alter the Court's decision to certify a class based on common questions including whether a standard purchase agreement was deceptive under California's Unfair Competition Law); *Creely v. HCR ManorCare, Inc.*, 2011 U.S. Dist. LEXIS 77170, 4-5 (N.D. Ohio) (reconsidering class certification in light of *Wal-Mart* and concluding the concerns raised in *Wal-Mart* "simply do not exist here"

30

because "the crux of this case is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights.").

¶45 Allstate also asserts that the common questions identified by the District Court do not demonstrate that the proposed class members have all "suffered the same injury." *See Wal-Mart*, 131 S. Ct. at 2551. Allstate specifically argues that the first proposed common question—whether the CCPR as applied to unrepresented claimants violates the UTPA—"is precisely the type of generalized question that *Wal-Mart* identified as insufficient." However, as discussed above, the determination of whether Allstate's common application of the CCPR to the proposed class violated the UTPA is the sort of "common scheme of deceptive conduct" that necessarily presents common questions of law and/or fact. *See Ferguson*, ¶ 28; *McReynolds*, 672 F.3d at 491.

¶46 Allstate further contends that this question cannot be answered as a class question because an independent cause of action for a UTPA violation or common law bad faith requires a showing of actual damages. Because Allstate argues a showing of actual damages would require case-specific, individual inquiries, it asserts that the first common question cannot be answered for the class as a whole. However, as discussed above, individualized damage inquiries generally do not preclude class certification. *See Mattson III*, ¶ 38 (citing *McDonald*, 261 Mont. at 403-04). Damages claims may be determined in later individual trials after a class trial has determined the availability of the requested injunctive and declaratory relief. *McReynolds*, 672 F.3d at 491.

31

¶47 Allstate argues the second proposed common question is deficient because whether Allstate's profit increased while total compensation paid to the class decreased does not provide a common answer demonstrating a violation of §§ 33-18-201(1) or (6), MCA. Jacobsen responds that the second common question would answer whether the CCPR caused indivisible "legal injury" to the class as a whole "through the use of a dishonest system, whether or not the monetary value of each settlement ultimately was unfair." We agree that the second certified class claim question is deficient, but only insofar as it conflicts with our conclusion that the Court's certification of a class-wide punitive damages award was improper. As framed by the District Court, the second class claim asks the class jury to determine whether Allstate's systematic use of the CCPR caused indivisible harm to the class as a whole by operation of a zero-sum economic theory and an inversely proportional relationship between Allstate profits and compensation paid to unrepresented claimants. The Court formulated this claim so as to justify the entry of a class-wide punitive damages award. We believe that the second certified class claim must be revised in light of our conclusion that punitive damages must be determined on an individualized basis, to be awarded only if the claimant can demonstrate compensatory loss. We consequently modify the second certified claim as follows:

> (B) Allstate's common, systematic use of this pattern and practice in Montana resulted in damages to the members of the class by operation of its zero-sum economic theory and the resulting inversely proportional relationship between Allstate profit increases and corresponding decreases in the total amount of compensation paid to the class of unrepresented claimants as a whole; and [. . .]

32

*See* Section 3-2-204, MCA (entitling us to "affirm, reverse, or modify any judgment or order appealed from[.]"). The District Court considered the second common contention as proposing whether the CCPR's alleged pursuit of profits at the expense of unrepresented claimants harmed the class by potentially violating the unrepresented claimants' rights to good faith adjusting of their claims under the UTPA. Answering this question, as revised, would presumably help determine whether the CCPR was an intentional, programmatic effort to produce unfair settlements in violation of the UTPA. While an increase in profits concurrent with a decrease in total payments to the class as a whole may not prove a violation of the UTPA by itself, the District Court did determine that significant proof existed that Allstate developed the CCPR program "with the knowledge and intent" that its implementation would reduce the net sum of unrepresented settlements. This revised inquiry would help advance the determination of the legality of the CCPR while avoiding our concerns with a class-wide award of punitive damages, as discussed below.

¶48 The third common contention asks whether Allstate consciously disregarded a high probability that the net effect of the CCPR would result in decreased settlements to the class as whole. Thus, an affirmative answer to the second question, determining that the CCPR was an intentional effort to engage in unfair settlement practices to increase profits, would likely advance the resolution of the third question and could support a finding of actual malice pursuant to § 27-1-221(2), MCA. However, Allstate claims that the third common question is deficient because Jacobsen does not assert his claim was underpaid. Jacobsen responds that the harm at issue is insufficient class-wide settlement payouts due to the

33

CCPR's zero-sum economic focus. Because Jacobsen argues that Allstate implemented the CCPR with the intention of implementing a zero-sum economic game to systematically produce unfair settlements and increase profits, this contention would resolve an issue central to each class member's claim: whether Allstate acted maliciously by applying the CCPR with the intent of lowering payouts to increase profits.

¶49 It is important to note that district courts have "broad power and discretion vested in them by" Rule 23 "with respect to matters involving the certification and management of potentially cumbersome or frivolous class actions." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345, 99 S. Ct. 2326 (1979); *accord Sieglock*, ¶ 8 ("Trial courts have the broadest discretion when deciding whether to certify a class."). Here, class-wide resolution of the proposed common contentions "will drive the resolution of the litigation." *Chipman*, ¶ 52. Such potentially illuminating questions are the focus of Rule 23(a)(2) and, as discussed above, resolving whether the CCPR violates the UTPA would set the stage for later individual trials. Moreover, as we require, the District Court examined the evidence behind the pleadings to determine that the proposed class *actually* satisfied the commonality prerequisite. We therefore conclude that the District Court did not abuse its discretion by determining that Jacobsen's common contentions, as construed by this Court, satisfy the commonality requirements of Rule 23(a)(2).

¶50 Again, both Jacobsen and Allstate have claimed that *Wal-Mart* presents a heightened commonality standard when compared with our previous conception of the rule, and both applied *Wal-Mart* to the case on appeal. Because of this, and because we affirm the District

34

Court's class certification (also based on *Wal-Mart*), we need not address whether *Wal-Mart* presents a different standard and if we intend to adopt it. *Mattson III*, ¶ 37. Instead, as we did in *Chipman* and *Mattson III,* we simply conclude that Jacobsen satisfies the *Wal-Mart* commonality standard because the certified class claims depend upon a common contention concerning a programmatic course of conduct that is "of such a nature that it is capable of classwide resolution," i.e., that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.

### iii. Typicality—Rule 23(a)(3)

¶51 Regarding typicality, we have previously explained that this requirement "is designed to ensure that the interests of the named representative are aligned with the interests of the class members, the rationale being that a named plaintiff who vigorously pursues his or her own interests will necessarily advance the interests of the class." *Mattson III*, ¶ 21 (citing *Chipman*, ¶ 53). Thus, " '[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.' " *Arlington Video Prods. v. Fifth Third Bancorp*, 2013 U.S. App. LEXIS 3355, 42 (6th Cir. 2013). The commonality and typicality requirements "tends to merge," *Falcon*, 457 U.S. 147, at 158 n. 13, and typicality generally "prevents plaintiffs from bringing a class action against defendants with whom they have not had any dealings." *Diaz*, ¶ 35. Typicality is not a demanding requirement, and it "is met if the named plaintiff's claim 'stems from the same *event, practice, or course of conduct* that forms the basis of the class claims and is based upon the

35

same legal or remedial theory.' " *Diaz*, ¶ 35 (quoting *McDonald*, 261 Mont. at 402). The underlying event, practice, or course of conduct "need not be identical." *Diaz*, ¶ 35. In addition, because *Wal-Mart's* discussion of Rule 23(a) hinged on an analysis of commonality, the opinion did not consider the requirements of typicality and did not purport to establish a heightened level of review.

¶52 The District Court found that the nature of Jacobsen's claim was typical of those of the proposed class because "significant proof [exists] that Allstate subjected the class as a whole, including but not limited to Plaintiff, to the same systematic violation of §§ 33-18-201(1) and (6), MCA, through the pattern and practice of the Casualty CCPR's unrepresented segment adjusting practices." Specifically, the Court found that: Jacobsen and each proposed class member are members of the above-defined class; Jacobsen and each class member were at a minimum subjected to the same allegedly unlawful conduct generally; and the allegedly unlawful conduct caused harm to the class as a whole by operation of the CCPR and its alleged zero-sum economic theory. Thus, as required by our opinion in *Mattson II*, the District Court probed behind the pleadings to actually determine whether Jacobsen met the typicality prerequisite.

¶53 On appeal, Allstate argues that the District Court erred because "Jacobsen is not even a member of the class." Allstate supports this contention by claiming that Jacobsen lacks individual standing because his initial release, obtained after his claim was adjusted to an unrepresented settlement pursuant to the CCPR, was rescinded, citing *Hop v. Safeco Ins. Co.*, 2011 MT 215, 361 Mont. 510, 261 P.3d 981. Allstate further attempts to distinguish

36

Jacobsen's claim from those of the class members by arguing that he does not contend his property damage claim was improperly handled and that he only seeks damages due to alleged emotional distress. Jacobsen in turn claims that the application of the CCPR is a per se violation of the UTPA, that the application of the CCPR to the class as a whole resulted in systemic economic injury, and that both he and the class suffered emotional distress from the application of the CCPR to their claims. Jacobsen essentially asserts that typicality isn't destroyed if class members display some uniqueness in the character of their individual injuries.

¶54 First, our opinion in *Hop* can be distinguished. There, we declined to find typicality based on the named representative's lack of individual standing for failing to meet the procedural requirements of § 33-18-242(6), MCA. *Hop*, ¶ 20. The named representative did not lack individual standing because of any factual differences in the substantive details of his claim, but for bringing a claim under § 33-18-201, MCA, despite the absence of any judgment in, or settlement of, his underlying claim as required by § 33-18-242(6), MCA. This holding is therefore inapplicable to Allstate's argument that Jacobsen's claim is not typical because of the specific facts of the application of the CCPR to his unrepresented claim.

¶55 Second, Allstate's arguments miss the aim of the typicality requirement by raising issues with the specific facts of Jacobsen's claim and the specific relief he seeks. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (1992) ("Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose

37

or the relief sought."). Jacobsen is a member of the class as defined by the District Court. He was an unrepresented third-party claimant bringing claims for property damage and bodily injury following a motor vehicle accident with an Allstate insured. Allstate applied the CCPR to Jacobsen while he was unrepresented, and, at base, Jacobsen's class claim alleges that Allstate systematically applies the CCPR to violate the rights of unrepresented claimants under the UTPA. Jacobsen's claim stems from the same course of conduct, the application of the CCPR to unrepresented claimants, as the proposed class members' claims and both Jacobsen's and the class members' claims are based on the same legal theory, that this application of the CCPR violates the UTPA. The injuries that allegedly resulted among class members, whether economic or emotional, are not sufficiently dissimilar to render Jacobsen's claim atypical of those of the class regarding this core allegation.

¶56 Indeed, we have previously determined that the common application of an insurance practice to a proposed class constitutes an event, practice, or course of conduct sufficient to satisfy the typicality requirement. *See Diaz*, ¶ 36; *Ferguson*, ¶¶ 26-28 (finding the related commonality requirement satisfied by an allegedly programmatic breach of a duty). In *Chipman*, we considered claims that the named plaintiffs' claims were atypical from those of the class in the context of a suit over the discontinuation of a sick leave buy-back program. *Chipman*, ¶ 54. The defendant employers argued that the named plaintiffs' claims were atypical because they worked for the employers for a longer period and may or may not have attended a meeting with management. *Chipman*, ¶ 54. The plaintiff employees argued that the class members' disputes were typical because they were triggered by the same underlying

38

cancellation of the buy-back program. *Chipman*, ¶ 54. We determined that because the claims of the named plaintiffs and class members all arose from the same event, the plaintiffs were able to establish "the necessary nexus between the injuries alleged by named Plaintiffs and class members." *Chipman*, ¶ 56. We based this decision on an analysis of *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422 (N.D. Ohio 2008). There, the named plaintiffs sought class certification in a suit against their employer over the imposition of a cap on post-retirement health benefits. *Cates*, 253 F.R.D. at 424. The district court determined that typicality was satisfied despite the fact that the benefit plans of the named plaintiffs varied from those of the class members because all of the claims arose from the same event or practice and the class members relied on the same legal theory. *Cates*, 253 F.R.D. at 429. Jacobsen's and the class's claims arise from the CCPR and all are proceeding under the legal theory that the CCPR was implemented to lower claims payments to the class by violating the rights afforded claimants under the UTPA.

¶57    In addition, as we discuss below, our reformation of the requested class relief will cause the specifics of Jacobsen's injuries to be aired in a later, individual suit for damages if the court awards the requested class injunctive and declaratory relief. Jacobsen's injunctive and declaratory claims arise from the same course of conduct as those of the putative class members, the application of the CCPR to his unrepresented claim for bodily injury and property damage following a motor vehicle incident. A class trial may efficiently, and appropriately, determine the legality of this program as applied to the class as a whole. *See McReynolds*, 672 F.3d at 490-91. Allstate's concerns over Jacobsen's typicality, centered on

39

the details of his injury and the availability of certain defenses, will be obviated if the specifics of Jacobsen's injuries will not be addressed in a class trial that considers only the proposed injunctive and declaratory relief. Thus, despite Allstate's contentions, the specifics of Jacobsen's alleged injuries do not render him atypical of the class because his claim "stems from the same *event, practice, or course of conduct* that forms the basis of the class claims and is based upon the same legal or remedial theory," *McDonald*, 261 Mont. at 402 (quoting *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir. 1982) (emphasis in original). This satisfies the typicality requirement and we affirm the District Court's decision.

### iv. Adequacy—Rule 23(a)(4)

¶58    The fourth prerequisite of Rule 23(a) allows certification only where the representative parties will fairly and adequately protect the interests of the class. M. R. Civ. P. 23(a)(4). "'This requires that the named representative's attorney be qualified, experienced, and generally capable to conduct the litigation, and that the named representative's interests not be antagonistic to the interests of the class.' " McDonald, 261 Mont. at 403, 862 P.2d at 1156 (quoting *Jordan*, 669 F.2d at 1323). Adequacy is therefore closely related to commonality and typicality. Regarding potential antagonistic interests, the District Court determined that because Jacobsen's asserted class claims satisfied the commonality and typicality requirements, Allstate had failed to show a compelling reason why Jacobsen's individual interests would conflict with the common interests of the class.

40

The court also took notice that Jacobsen's class counsel are competent and experienced in complex class action litigation.

¶59   Allstate argues that Jacobsen's claims will be subject to unique defenses that are likely to become the focus of any trial. However, "perfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable." *Matamoros v. Starbucks Corp*, 699 F.3d 129, 138 (1st Cir. 2012). When we apply this recognition to the adequacy requirement of Rule 23(a)(4), it is clear that " '[o]nly conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.' " *Matamoros*, 699 F.3d at 138 (quoting 1 William B. Rubenstein, Newberg on Class Actions § 3:58 (5th ed. 2012)). The potential intra-class conflicts that Allstate cites—which include Jacobsen's desire for an early settlement, that he may have initially decided to not hire an attorney, and the cause of his emotional distress—are not "so substantial as to overbalance the common interests of the class members as a whole." *Matamoros*, 699 F.3d at 138. As a third party claimant contesting the legality of the CCPR, Jacobsen has incentive to vigorously pursue the requested injunctive and declaratory relief.  In view of this, the limited scope of the class trial on remand, and the District Court's considerable discretion in class certification decisions, we conclude that the District Court did not abuse its discretion by concluding that Jacobsen's interests are not antagonistic to those of the proposed class.

¶60   *2. Whether the District Court abused its discretion by certifying a M. R. Civ. P. 23(b)(2) class action lawsuit?*

¶61 Once the Rule 23(a) prerequisites are satisfied, the analysis shifts to Rule 23(b). *Mattson III*, ¶ 18. To be certified, a class must fit within one of the three types described in Rule 23(b). *Wal-Mart*, 131 S. Ct. at 2548-49. At the District Court, Jacobsen argued that his proposed class qualified under Rule 23(b)(2), or alternatively, as a "hybrid-type class" combining elements of Rule 23(b)(2) and Rule 23(b)(3). Rule 23(b)(2) allows a class action to be maintained if, having met the requirements of Rule 23(a), "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" M. R. Civ. P. 23(b)(2). As the *Wal-Mart* decision noted, "[t]he key to the [Rule 23](b)(2) class is, the indivisible nature of the injunctive or declaratory remedy warranted-- the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them," *Wal-Mart*, 131 S. Ct. at 2557 (internal citation omitted).

¶62 Rule 23(b)(3) allows a class action if the court finds that the common questions of law or fact predominate over individual questions. The District Court declined to address Jacobsen's alternative claim for Rule 23(b)(3) relief because of the "cursory" briefing and "logical inconsistency" of a hybrid Rule 23(b)(2) and (b)(3) class. Jacobsen does not challenge this decision on appeal.

¶63 The District Court specifically found that "significant proof" existed that Allstate, the party opposing the class, had acted on grounds that generally applied to the class through its

42

use of the CCPR program.[8]  Following this determination, the Court examined whether Jacobsen sought appropriate forms of injunctive and declaratory relief and whether Jacobsen's requested monetary relief was permissible under Rule 23(b)(2).

After denying Jacobsen's claims for equitable disgorgement and a vague prohibitive injunction,[9] the Court certified the following class action remedies under Rule 23(b)(2):

> (A) declaratory judgment adjudicating the constituent assertions of the certified class claim [quoted at ¶ 16];
>
> (B) mandatory injunction requiring Allstate to:
>
> > (1) give all class members court-approved notice of the right and opportunity to obtain re-opening and re-adjustment of their individual claims by timely returning a proof of claim form;
> > (2) re-open and re-adjust each individual claim upon receipt of a timely filed proof of claim;
>
> (C) class-wide punitive damages pursuant to §§ 27-1-220 and 27-1-221(2), MCA (actual malice), predicated on the above-referenced class-wide conduct; and

---

[8] The District Court based this finding on its construction of Jacobsen's class claim, which is quoted at ¶ 16, supra.  The Court essentially determined that Jacobsen claimed that the CCPR was a common practice in violation of §§ 33-18-201(1) and (6), MCA, as applied to the class as a whole, that the CCPR caused economic harm to the class as a whole, and that Allstate consciously disregarded the high probability that the CCPR would result in insufficient net settlement payouts.

[9] The Court found that that a mandatory injunction compelling disgorgement of unlawful profits was not appropriate in addition to punitive damages and denied its availability as a Rule 23(b)(2) remedy.  The Court also found that Jacobsen's requested prohibitive injunction enjoining Allstate from engaging in unlawful conduct as found by the jury was fatally vague because it failed to articulate a specific prohibition that would provide relief to the class as a whole.  Jacobsen does not appeal either decision.

(D) common fund recovery of class action attorney fees and costs upon a class-wide punitive damages award[.][10]

Allstate generally contests the appropriateness of the certified class remedies as applied to both the class and Allstate, and further asserts various violations of both its, and the class members', right to due process.

¶64    As we explain below, we affirm the Court's certification of a Rule 23(b)(2) class asserting the above class declaratory ("(A)") and injunctive ("(B)") relief, but we reverse the certification of a potential class-wide punitive damages award ("(C)").  We accordingly remand with direction to determine the availability of the above declaratory and injunctive relief in a class trial.  Further, instead of considering class-wide punitive damages, the class trial will determine whether Allstate's implementation of the CCPR involved either actual fraud or actual malice pursuant to § 27-1-221, MCA.  *See* § 33-18-242(4), MCA; *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 91, 345 Mont. 12, 192 P.3d 186.  Thus, the class trial will initially determine if the CCPR violates the UPTA according to the certified declaratory relief.  If so, the Court will issue a mandatory injunction requiring Allstate to give all class members notice of the right to re-open and re-adjust their individual claims.  Last, the class trial will determine if Allstate engaged in actual fraud or actual malice in implementing the CCPR.  If so, the trier of fact in the later individual cases may determine the amount of

---

[10] Allstate does not challenge the certification of common fund attorney fees on appeal.

44

individual punitive damages to be awarded if individual actual damages are also established. We will discuss the certified class remedies in turn.

## A.  The Declaratory and Injunctive Relief

### i.  Class Cohesiveness

¶65     Allstate first argues that a Rule 23(b)(2) class is inappropriate because the class lacks cohesiveness. This is essentially a restatement of Allstate's arguments against commonality and typicality. However, because a Rule 23(b)(2) class action is considered "mandatory," *see Wal-Mart*, 131 S. Ct. at 2558,[11] a class that lacks homogeneity could unjustly bind absent class members to a negative decision. *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998). Because the relief sought must be able to affect the entire class at once, we will examine the cohesiveness of the class in the context of a mandatory Rule 23(b)(2) class.

¶66     Allstate claims the proposed class is inappropriate as a Rule 23(b)(2) class because it "would necessarily include many individuals who suffered no injury and thus could have no UTPA claim . . . ." Allstate claims both that these dissimilar class members would be unjustly bound by the action and that the lack of homogeneity would involve the adjudication of significant individual issues. However, these arguments are premised on a misunderstanding of the nature of Jacobsen's asserted class claims and are precluded by the scope of the class trial on remand. The individual context of any one settlement is not relevant to the adjudication of the certified declaratory and injunctive relief and our

---

[11]  Rule 23(b)(2) classes are considered "mandatory" because the rule does not provide an opportunity for class members to opt out and does not require a district court

reformation of the punitive damages portion of the certified relief removes the consideration of individual circumstances in the class trial. Thus, Allstate's claim that not all class members have suffered actual harm or an unfair adjustment misses the point. The certified class claims on remand are not intended to resolve individual cases of unfair settlement or payment. Instead, they are aimed at adjudicating the initial legality of the CCPR as applied to the class. The later individual trials would allow Allstate to present evidence that individual class members suffered no injury. But, the initial legality of the CCPR would not need to be re-litigated in each subsequent individual trial. *See DL,* 2013 U.S. App. at 22; *McReynolds,* 672 F.3d at 491; *Mejdrech,* 319 F.3d at 911.

¶67    As the District Court noted, our decision in *Ferguson* supports certifying Jacobsen's requested declaratory and injunctive relief as part of a Rule 23(b)(2) class. There, as part of a Rule 23(b)(2) class, the plaintiff sought a declaration that the insurer, Safeco, had breached its adjustment duties through a "programmatic assertion of subrogation without first investigating and determining whether insureds had received their 'made-whole' rights." *Ferguson,* ¶ 33. Facing a similar claim that the requested declaratory relief would require the adjudication of individual "made-whole" entitlements, we determined that the plaintiff's claim did not raise issues with Safeco's application of the "made-whole" rule to any one insured. *Ferguson,* ¶¶ 34, 39. Instead, we concluded that the plaintiff's claim contested "the procedures of a program of subrogation which systematically deprives all class members of any consideration of their 'made-whole' rights." *Ferguson,* ¶ 34. Thus, like Jacobsen, the

---

to afford them notice. *Wal-Mart,* 131 S. Ct. at 2558.

plaintiff in *Ferguson* sought a declaration requiring Safeco to follow a statutory duty prior to any consideration of the actual harm the violation of this standard caused to any individual class member. These "class claims do not seek a determination of entitlements for each class member and the payment of damages; rather [both] class claims seek a declaratory ruling that will be enforced to compel [the insurer] to follow the legal standard . . . ." *Ferguson*, ¶ 34; *see also Diaz*, ¶ 47.

¶68     Here, as in *Ferguson*, the plaintiff seeks "an order compelling [the insurer] to properly perform its statutory adjustment duties." *Ferguson*, ¶ 36.  Because Jacobsen presents a common question alleging a common injury, an answer will determine whether the CCPR will be "enjoined or declared unlawful only as to all of the class members or as to none of them." *See Wal-Mart*, 131 S. Ct. at 2557.  The potential later individualized determinations of underpayment are not necessary to answer Jacobsen's class claims and do not render the class overbroad.

### ii. Class Injunctive and Declaratory Relief is "Final"

¶69     Allstate contends that Rule 23(b)(2) requires "final" relief, and contends the certified relief is not final because "it only serves as a basis to present damage claims later."  Allstate largely cites federal precedent as support for this proposition.  However, we have never construed M. R. Civ. P. 23(b)(2)'s use of "final" to impose a substantive obligation on plaintiffs, and it is not clear that Allstate's citations to authority recommend that we do so. *See Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006) ("Subsection (b)(2) was not intended to 'extend to cases in which the appropriate final relief relates exclusively

or predominantly to monetary damages.'"). Moreover, Allstate's preferred citations are distinguishable from the present case. *See Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883 (7th Cir. 2011) (contesting the failure to implement a uniform program); *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012) (finding proof of an illegal policy was "entirely absent here."). We have not recognized a substantive "finality" requirement in Rule 23(b)(2) and we address Allstate's complaints concerning monetary relief below.

### iii. Injunctive and Declaratory Relief is not Amorphous

¶70 As noted, Jacobsen seeks declaratory relief declaring the application of the CCPR to the class to be a violation of the UTPA and a mandatory injunction requiring Allstate to re-open and re-adjust claims. Allstate complains that this relief "is so amorphous and vague that it cannot support class certification," citing *Shook v. Bd. of County Comm'rs*, 543 F.3d 597, 605 (10th Cir. 2008) and *Kartman*.

¶71 Allstate specifically argues that the requested declaratory relief would provide an inappropriately abstract or advisory opinion that failed to provide further direction on the process to be used if claims are to be re-adjusted. However, our rule against issuing advisory opinions is based in the concept of justiciability. *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶¶ 8-9, 355 Mont. 142, 226 P.3d 567. The various doctrines of justiciability seek to ensure that courts provide specific relief in concrete, actual controversies instead of opinions advising what the law or rule *would be* based upon a hypothetical set of facts or abstract proposition. *Plan Helena, Inc.*, ¶ 9. This prohibition does not mean that the Court's potential determination that the CCPR violates the law also

48

needs to be accompanied by a judicial proposal for a legal claims adjusting program. Our statutory requirement that an order granting an injunction be specific in its terms, § 27-19-105(2), MCA, does not require this level of specificity either. *See Guthrie v. Hardy*, 2001 MT 122, ¶¶ 61-62, 305 Mont. 367, 28 P.3d 467 (faulting an injunction which failed to indicate which named party carried the obligation of maintaining a road). Insurance adjusting is squarely within Allstate's area of expertise, not the judicial branch's, and where we have previously faulted injunctions for a lack of specificity, we have not required the level of detail Allstate now requests.

¶72 Allstate's citations to authority do not support enlisting the judiciary to draft claims adjusting policies either. For example, in *Shook*, plaintiffs sought to certify a class containing all present and future mentally ill inmates in a Colorado jail. *Shook*, 543 F.3d at 600. The plaintiffs sought a Rule 23(b)(2) class with declaratory and injunctive relief addressing jail conditions. However, the plaintiffs suffered from a wide variety of mental illnesses and were subjected to a correspondingly wide range of treatments by the jail staff. *Shook*, 543 F.3d at 601. The plaintiffs sought a broad injunction "establishing standards across a wide range of areas affecting mentally ill inmates," touching upon staffing, training, inmate housing, safety, psychiatric care, and the proper use of force. *Shook*, 543 F.3d at 602. The district court denied Rule 23(b)(2) certification because plaintiffs could not show that the defendants acted on grounds generally applicable to the whole class and because the variety within the class precluded class-wide injunctive relief. *Shook*, 543 F.3d at 603. The Court of Appeals affirmed the decision, noting that "the relief plaintiffs seek would require

49

the district court to craft an injunction that distinguishes—based on individual characteristics and circumstances—*between* how prison officials may treat class members[.]" *Shook*, 543 F.3d at 605 (emphasis in original). Moreover, an injunction that took the opposite tack and merely required "adequate" services would fail to describe just what, in light of the variety of the inmates' needs, must be done. *Shook*, 543 F.3d at 606. *Shook* therefore does not stand for the proposition that Rule 23(b)(2) requires a certain specificity of injunctive relief, but for the general recognition that Rule 23(b)(2) classes must be sufficiently cohesive so that the injunctive relief applies to the class as a whole.

¶73 In *Kartman*, plaintiffs brought a class claim alleging, in part, that State Farm's failure to use a uniform, objective criteria while assessing their hail-damaged roofs amounted to breach of contract, bad faith, and unjust enrichment. *Kartman*, 634 F.3d at 887. As relief, plaintiffs requested compensatory and punitive damages and an injunction requiring State Farm to reinspect all class members' roofs pursuant to a uniform and objective standard. The district court judge certified a Rule 23(b)(2) class to adjudicate the request for an injunction and to assess State Farm's liability. *Kartman*, 634 F.3d at 888. The appellate court reversed, finding that plaintiffs' only cognizable injury was for underpayment of their claims and that the requested injunctive relief was not the proper remedy. *Kartman*, 634 F.3d at 889-90. This finding was largely based on the court's conclusion that State Farm had no duty to use an objective, uniform standard to determine hail-damage. *Kartman*, 634 F.3d at 890. Thus, the plaintiffs' failing was that the court determined State Farm had *no* duty to use a particular method to evaluate hail-damage claims, let alone a duty to use the method

50

the plaintiffs sought to impose with an injunction. *Kartman*, 634 F.3d at 890. This situation is distinct from the present case, where Jacobsen seeks a declaration that Allstate's CCPR violates the UTPA and an injunction requiring notice to the class of the right to reopen their claims. Jacobsen, unlike the plaintiffs in *Kartman*, is not contesting the lack of a program or seeking to outline the contours of a legal program to be imposed on Allstate.

¶74    Unlike *Shook* and *Kartman*, the certified class at issue has been subjected to a common practice and has allegedly suffered a common injury to statutorily conferred rights. This common contention, as discussed, is amenable to class-wide relief. This does not mean, however, that the court must go beyond an injunction addressing tortious conduct to affirmatively dictate proper adjusting practices. *See Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 695 F.3d 360, 368-69 (5th Cir. 2012) (holding that injunctions are problematic when they order a defendant to obey the law *and* do not indicate what law the defendant needs to obey).

### B.  Punitive Damages in a Rule 23(b)(2) Claim

¶75    The District Court certified the availability of class-wide punitive damages pursuant to § 27-1-220 and § 27-1-221(2), MCA. The District Court determined that monetary relief is available in a Rule 23(b)(2) class under *Wal-Mart* if it is incidental to the declaratory and injunctive relief, affords indivisible, non-individualized relief in a single stroke, and comports with due process by not prejudicing the rights of the class members and defendant to contest specific cases. The Court also noted that punitive damages are generally not available without a predicate award of compensatory damages, but reasoned that an award of

51

punitive damages based on actual malice does not require an award of compensatory damages if the evidence shows that the predicate tort caused actual harm or damage. The Court then determined that Jacobsen's claim was capable of showing that Allstate's alleged zero-sum economic theory visited a form of indivisible, actual economic harm upon the entire class, which it reasoned "would constitute a sufficient predicate for a class-wide punitive damages award in this case." The Court further concluded that a class-wide punitive damages award did not implicate the due process concerns addressed in *Wal-Mart* because it was not an individualized monetary remedy and did not litigate any claim-specific issues.

¶76 Allstate initially contests the basic appropriateness of monetary damages under Rule 23(b)(2), claiming that "one possible reading" of Rule 23(b)(2) is that it does not authorize certification of monetary claims at all. The majority opinion in *Wal-Mart* did not go so far as to foreclose the availability of monetary relief in Rule 23(b)(2) classes, however, and it left open the possibility that incidental monetary claims could be certified under Rule 23(b)(2). *Wal-Mart*, 131 S. Ct. at 2557. However, we need not decide the matter in this case, because we reverse the District Court's certification of a class-wide punitive damages award based on our concerns over the award's potential effect on the due process rights of Allstate.

### i. The Class-Wide Punitive Damages and Due Process

¶77 Allstate also claims that the District Court's certification of class-wide punitive damages violates Allstate's right to due process because Allstate would be precluded from raising case-specific defenses to an individual class member's entitlement to punitive

52

damages (e.g. that individual class member's claims were handled appropriately or paid fairly). Conversely, Allstate argues that the potential class trial would "inappropriately devolve into a series of mini-trials "if the Court were to allow Allstate to present defenses to class member's entitlement to punitive damages. Jacobsen counters that our decision in *Gonzales* established that punitive damages class claims can be maintained for systematic wrongdoing without individualized proof of harm. Jacobsen also asserts that Allstate's proffered federal precedent does not apply in the class action context.

¶78 Given the nature of the requested relief as part of a Rule 23(b)(2) class, we agree that Allstate should be able to establish defenses to individual claims to ensure that punitive damages are not awarded to claimants that were not actually damaged by the adjustment of their claims under the CCPR. *See Philip Morris USA v. Williams*, 549 U.S. 346, 353, 127 S. Ct. 1057 (2007) ("[T]he Due Process Clause prohibits a State from punishing an individual without first providing that individual with 'an opportunity to present every available defense.' "); *Seltzer v. Morton*, 2007 MT 62, ¶ 145, 336 Mont. 225, 154 P.3d 561. It is true that our *Gonzales* opinion considered the constitutionality of a class-wide punitive damages award. However, *Gonzales* did not consider a class-wide punitive damages award in the context of a Rule 23(b)(2) class and we did not consider the defendant's right to present a defense to each class member's entitlement to a punitive damages award. *Gonzales*, ¶ 15. *Gonzales* instead approved class-wide punitive damages in a combination Rule 23(b)(1) and (3) class suit where the district court certified a Rule 23(b)(3) compensatory damages class. *Gonzales*, ¶¶ 17-19. Thus, the *Gonzales* class members' entitlement to compensatory

53

damages would be established during the class trial and would support an award of punitive damages. Here, adjudicating the requested injunctive and declaratory relief would not involve a similar determination of compensatory damages. Potentially granting class-wide punitive damages *before* determining whether individual class members suffered actual damages, as Jacobsen suggests, raises serious concerns about fairness. *See Jacobsen I*, ¶ 67; *Stipe v. First Interstate Bank-Polson*, 2008 MT 239, ¶ 23, 344 Mont. 435, 188 P.3d 1063. "Due process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66, 92 S. Ct. 862 (1972). Permitting a class-wide recovery of punitive damages before sending notice to the class and determining the extent of the class members' actual harm would allow the punitive award to be potentially based on non-injured parties. Allstate should be allowed to contest class members' entitlement to punitive damages. *Philip Morris USA*, 549 U.S. at 353-54. We accordingly conclude that the District Court abused its discretion by certifying the requested class-wide punitive monetary relief.

### ii. The Second Certified Class Claim

¶79 Again, our conclusion that the Court abused its discretion by certifying a class-wide punitive damages award requires us to revise the second certified class claim. Our reformation of the second claim is discussed in paragraph 47, *supra*.

¶80    *3. Whether the District Court erred by holding that the Montana Rules of Evidence do not apply to class action proceedings?*

¶81    Last, Allstate entered several objections before the District Court concerning the Court's consideration of what Allstate argued was inadmissible evidence during the certification proceedings.  In a footnote, the Court determined that the evidence Jacobsen presented in the Rule 23 certification proceedings did not need to be "in a trial-admissible form," and denied Allstate's objections to "the ultimate trial-admissible evidentiary sufficiency of Plaintiff's preliminary Rule 23 factual showings in this case."

¶82    On appeal, Allstate maintains that the District Court erroneously based its class certification order on evidence that "was clearly inadmissible under the Rules of Evidence." Allstate argues this allegedly inadmissible evidence included opinions and statements in an expert report, an article written by the Consumer Federation of America, an affidavit by one of Jacobsen's attorneys, a power point presentation referred to as the "Liddy slides," an incentive compensation plan, and affidavits and testimony from a New Mexico case that considered the CCPR.   Jacobsen counters that his case "was grounded on dozens of McKinsey documents" that Allstate produced on remand and that all other evidence was properly considered.  However, because the Court did not make a ruling on the admissibility of *any* of the evidence in question, the specific admissibility of a particular piece of evidence is not presented to this Court on appeal.  Rather, we must consider the Court's contention that evidence need not be in a "trial admissible form" for the purposes of class certification proceedings.

¶83     Allstate specifically contends that the District Court's determination that "a rigorous Rule 23 analysis" does not necessarily require a preliminary factual showing in "a trial-admissible form" was error in light of our decision in *Mattson II* and the Montana Rules of Evidence.  In *Mattson II*, the District Court refrained from engaging in an analysis of the merits of the plaintiffs' claims and stated it was required to take the plaintiffs' allegations in support of the class action as true.  *Mattson II*, ¶ 61.  The District Court thereafter certified the class.  On appeal, the defendant argued that the court erred in its Rule 23 analysis by taking the plaintiffs' allegations as true and asserted that the court should have made its determination "based upon the evidence."  *Mattson II*, ¶ 62.  We held that the court erred by determining it must take the plaintiffs' allegations as true and noted a district court "certainly may look past the pleadings" when determining if Rule 23's requirements have been met.  *Mattson II*, ¶ 65.  Quoting the Supreme Court's decision in *Falcon*, we held " 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question' " to determine actual conformance with Rule 23(a).  *Mattson II*, ¶ 65 (quoting *Falcon*, 457 U.S. at 160, 102 S. Ct. at 2372).  Therefore, while this "probe behind the pleadings" *may* necessitate allowing discovery and hearing evidence, *Mattson II* also determined "there is no absolute requirement that a hearing be held" if "the paper record before the court" is adequate.  *Mattson II*, ¶ 66.  The applicability of the Montana Rules of Evidence was not addressed by this Court and was not a basis of our decision.  Thus, despite Allstate's argument to the contrary, *Mattson II* does not stand for the proposition that courts *must* apply the Rules of Evidence in Rule 23 proceedings.

56

¶84    Allstate also argues that the Montana Rules of Evidence require their application to Rule 23 proceedings. In support, Allstate cites M. R. Evid. 101(a) and 104(a). Rule 101(a) states that "[t]hese rules govern all proceedings in all courts in the state of Montana with the exceptions stated in this rule." Rule 101(c) lists the situations in which the rules do not apply, including preliminary questions of fact, grand juries, miscellaneous proceedings like those for extradition or the issuance of warrants for arrest, "summary" proceedings, and other miscellaneous proceedings like ex parte matters. Allstate contends that because the exceptions listed under Rule 101(c) do not include class certification proceedings, the rules must apply. Rule 104 governs "[p]reliminary questions of admissibility" and Rule 104(a) specifically covers "[q]uestions of admissibility generally." While Rule 104(a) notes further situations where the rules of evidence do not apply, it is not relevant to this case.

¶85    In response, Jacobsen cites federal authority stating that courts in Rule 23 proceedings "may consider evidence that may not be admissible at trial." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 519 (C.D. Cal. 2011); *see also Fisher v. Ciba Specialty Chemicals Corp*, 238 F.R.D. 273, 279 n. 7 (S.D. Ala. 2006) ("The Federal Rules of Evidence are not stringently applied at the class certification stage because of the preliminary nature of such proceedings."). Indeed, federal courts do not generally require the application of the rules of evidence in class certification proceedings. *See Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 603 n. 22 (9th Cir. 2010) ("We are not convinced by the dissent's argument that *Daubert* has exactly the same application at the class certification stage as it does to expert testimony relevant at trial.") (reversed on other grounds by *Wal-Mart Stores, Inc. v. Dukes*,

57

131 S. Ct. 795 (2011)); *Ellis v. Costco Wholesale Corp*, 240 F.R.D. 627, 635 (N.D. Cal. 2007) ("At this early stage, robust gatekeeping of expert evidence is not required; rather, the court should ask only if expert evidence is 'useful in evaluating whether class certification requirements have been met.' "); *Kelly v. Montgomery Lynch & Assocs.*, 2007 U.S. Dist. LEXIS 93656, 3-4 (N.D. Ohio 2007) ("The Court declines to grant the Plaintiff's motion to strike, however, because the Federal Rules of Evidence do not strictly apply in evaluating a Rule 23 motion for class certification."); *Bell v. Addus Healthcare, Inc.*, 2007 U.S. Dist. LEXIS 78950, 5-6 (W.D. Wash. 2007) (Thus, "Fed. R. Civ. Pro. 23 does not require admissible evidence in support of a motion for class certification and the Court will not create that standard.").

¶86    Importantly, the federal cases that hold that the Federal Rules of Evidence do not necessarily apply to class certification proceedings do not base their decisions on an application of F. R. Evid. 1101, which, like M. R. Evid. 101(c), enumerates the exceptions to the general applicability of the rules of evidence.[12]  Instead, these federal courts based their conclusions on the requirements of the identical F. R. Civ. P. 23, and, as noted, we consider such federal precedent to be instructive.  Specifically, these courts have determined that Rule

---

[12] Like Montana Rule 101, Federal Rule 1101 specifically enumerates the situations in which the evidentiary rules do not apply.  These situations are:  preliminary questions of fact regarding admissibility under Rule 104(a), grand-jury proceedings, and miscellaneous proceedings like extradition or rendition, issuing a warrant or summons, sentencing, granting or revoking probation, or bail.  Thus, just like the Montana Rules, the Federal Rules neither address their applicability in class certification proceedings nor except the proceedings from

23 does not require specific proceedings or trial admissible evidence because of the preliminary nature of class certification and trial courts' broad discretion in certification decisions. *See e.g., Rhodes v. E.I. Dupont De Nemours & Co.*, 2008 U.S. Dist. LEXIS 46159, 37 (S.D. W. Va. 2008) (Rule 23 "does not specifically provide for, require, or prohibit specific proceedings," including those that apply the Federal Rules of Evidence). Indeed, "class certification is not a dispositive motion [like Fed. R. Civ. P. 56] that requires [a] Plaintiff to submit admissible evidence" in support of their arguments for certification, and federal courts have been reluctant to create that requirement. *Bell*, 2007 U.S. Dist. at 5-6.

¶87    Because of the preliminary, discretionary nature of class certification questions, every federal circuit but the Seventh[13] has declined to require that a district court must conclusively decide what evidence may be ultimately admissible at trial during the class certification stage. *See Cox v. Zurn Pex, Inc.*, 644 F.3d 604, 611 (8th Cir. 2011). "A court's rulings on class certification issues may evolve" through the course of discovery. *Cox*, 644 F. 3d at 613. The "inherently tentative" nature of these decisions may make final evidentiary decisions unnecessary or inappropriate. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11, 98 S. Ct. 2454 (1978).

their application.

[13]    The Seventh Circuit only requires a conclusive ruling on any challenge to an expert's qualifications or submissions when the expert's report or testimony is " 'critical to class certification.' " *See e.g.*, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812 (7th Cir. 2012).

¶88    Importantly, the *Wal-Mart* decision did not dispose of the federal courts' varying application of the Federal Rules of Evidence to class certification proceedings.  The *Wal-Mart* Court considered the plaintiffs' production of the testimony of Dr. William Bielby, a sociological expert, as the only proffered evidence of Wal-Mart's alleged "general policy of [gender] discrimination."  *Wal-Mart*, 131 S. Ct. at 2553-54.  The expert testified that Wal-Mart's corporate culture was "vulnerable" to gender bias, but he could not specifically determine how regularly gender stereotypes played a meaningful role in employment decisions.  *Wal-Mart*, 131 S. Ct. at 2553.  The parties disputed whether this testimony met the standards for the admission of expert testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), and the District Court concluded *Daubert* didn't apply to class certification proceedings.  The Supreme Court's opinion did not squarely address this contention, merely offering "We doubt" that "*Daubert* did not apply to expert testimony at the certification stage" in dicta while concluding "even if properly considered, Bielby's testimony does nothing to advance respondent's case."  *Wal-Mart*, 131 S. Ct. at 2554.  Thus, the *Wal-Mart* majority failed to address the application of the Rules of Evidence to class action certification proceedings and the Court's doubt was aimed only at the application of *Daubert*, a question not presented here.

¶89    Because the District Court's inquiry into a motion for class certification is tentative, preliminary, and limited to a determination of only whether the litigation may be conducted on a class basis, "the court's analysis is necessarily prospective and subject to change . . . and

60

there is bound to be some evidentiary uncertainty." *Cox*, 644 F.3d at 613. A decision on a motion to certify a class is not a conclusive judgment on the merits of the case, and is "not accompanied by the traditional rules and procedure applicable to civil trials." *Eisen*, 417 U.S. at 178, 94 S. Ct. at 2153. We therefore conclude that the District Court did not err by determining that evidence considered for the purposes of class certification need not be in trial admissible form.

## CONCLUSION

¶90    We accordingly conclude that the District Court did not abuse its discretion by certifying a Rule 23(b)(2) class action. We do, however, conclude that the certification of class-wide punitive damages was inappropriate in the context of a Rule 23(b)(2) class. According to our reformation of the requested relief, we remand for a class trial to determine whether the application of the CCPR to the class violated the UTPA, and, if so, to determine whether the District Court should enter an order requiring Allstate to provide notice to the class members of their right to re-open and re-adjust their claims. The trier of fact in the class trial will also make a determination as to whether Allstate's implementation of the CCPR program involved actual fraud or actual malice, such as could justify the entry of punitive damages following a finding of actual damages in the ensuing individual cases. If the trier of fact determines that Allstate did not engage in either actual fraud or actual malice, the class members would be entitled to only the compensatory damages they can prove in the individual cases. Following the class trial, the Court shall determine whether there should be a common fund recovery of class-action attorney fees and costs.

61

¶91　We also conclude that the District Court did not err in its determination that class certification proceedings do not require evidence to be in "trial admissible" form.

¶92　We affirm the class certification, but modify the class claim and the certified class relief as herein set forth.

/S/ MICHAEL E WHEAT

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
_____

Justice Beth Baker, dissenting.

¶93　I agree that the District Court erred in certifying class-wide punitive damages relief under M. R. Civ. P. 23(b)(2). The Court's attempt to preserve the class certification order is flawed, however, because it still leaves in place a class claim that cannot meet the requirements of Rule 23(b)(2).

¶94　As a preliminary matter, regarding Rule 23(a), I disagree with the Court's statement that *Wal-Mart* has raised "dual questions" that require some future case for our clarification. Opinion, ¶¶ 32-33. First, no party in this case has disputed that *Wal-Mart*'s analysis of the commonality element of Rule 23(a)(2) imposed a heightened threshold for class certification. Second, counsel for both parties agreed during oral argument that *Wal-Mart*'s commonality analysis established a different standard from that used in our prior cases. We already have

62

recognized explicitly these points. *Chipman*, ¶ 47. Further, we did not state in *Chipman*, as the Court implies (Opinion, ¶ 28 (citing *Chipman*, ¶ 43)), that Montana courts "are not required to march lockstep with federal interpretations of Fed. R. Civ. P. 23." While that statement in the Court's Opinion today is not untrue, we invoked in *Chipman* "this Court's long history of relying on federal jurisprudence when interpreting the class certification requirements" and did not consider the standards we had applied "prior to *Wal-Mart*." *Mattson III*, ¶ 53 (Baker, J., dissenting) (quoting *Chipman*, ¶¶ 47, 52). By perpetuating confusion over whether *Wal-Mart* changed the law—a point I do not believe is reasonably open to dispute—the Court disserves prospective class plaintiffs and defendants, as well as the district courts that seem to be called upon with increasing frequency to decide class certification issues.

¶95 Our October 2011 adoption of comprehensive amendments to the Rules of Civil Procedure, in fact, came in response to the recommendation of the Court's Advisory Commission on the Rules of Civil and Appellate Procedure to bring more uniformity between the Montana and Federal Rules of Civil Procedure. Rule 23 of the Montana Rules is now identical in all substantive respects with Rule 23 of the Federal Rules, with two exceptions not applicable here.[1] No party has argued that there is a legitimate basis in this case for this Court to part company with its federal counterparts on the standard for

---

[1] Montana's Rule 23, unlike its federal counterpart, allows appeal of right from an order granting or denying class action certification or an order finally and definitively rejecting a proposed class settlement. *Compare* M. R. Civ. P. 23(f) and Fed. R. Civ. P. 23(f). The federal rule also contains a provision specific to referral of certain matters to a United States Magistrate Judge. Fed. R. Civ. P. 23(h)(4).

commonality.  The Court should refrain from interjecting speculation that it may someday choose to do so if the right case comes along.  Since the Court in any event applies the *Wal-Mart* commonality standard (Opinion, ¶ 50), its discussion on this point is not necessary.

¶96    Even assuming that all four factors of Rule 23(a) are met in this case, there is nonetheless a serious flaw in the Court's analysis of Rule 23(b)(2). [2]  "Failure to establish each requisite element of Rule 23 is fatal to class certification." *Chipman*, ¶ 43.  The Court's dismissal of Rule 23(b)(2)'s "finality" requirement not only departs from our consistent reliance on federal authorities regarding class certification, but fails to apply the language of our own rule.   M. R. Civ. P. 23(b)(2), identical to its federal counterpart, provides that if Rule 23(a) is satisfied, a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, ***so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole***[.]"  (Emphasis added.)   The Court summarily rejects Allstate's arguments about the "final injunctive relief" language by declaring that we "have not recognized a substantive 'finality'

_____

[2] I harbor reservations about whether Jacobsen meets the requirements of Rule 23(a)(3) and (a)(4), since he already has obtained the relief he seeks for the class—reopening and readjustment of an unrepresented claim. *See Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 180 (2d Cir. 1990) (unique defenses may preclude both 23(a)(3) typicality and 23(a)(4) adequacy of representation) (citing 7A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1764 at 259-60 (2d ed. 1986) and 3B J. Moore & J. Kennedy, *Moore's Federal Practice* para. 23.07[1] at 23-192 (2d ed. 1987)).  My concern is heightened by the Court's determination that Jacobsen's claims satisfy typicality because "the specifics of [his] injuries [will] be aired in a later, individual suit for damages if the court awards the requested class injunctive and declaratory relief." Opinion, ¶ 57.  Since that concern relates primarily to the  requirements  of Rule 23(b)(2), I do not further discuss typicality here.

requirement in Rule 23(b)(2)" and suggesting that the federal cases on which Allstate relies are "not clear" that we should do so.  Opinion, ¶ 69.

¶97    While this Court has not had occasion to consider the question, the history of the rule and the federal cases interpreting it leave little room for doubt as to the meaning of the "finality" requirement in Rule 23(b)(2).  The Advisory Committee notes to subsection (b)(2) state that it was intended to reach situations where "final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate."  This subsection of the rule does not, however, "extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."  Fed. R. Civ. P. 23 Advisory Committee Notes to 1966 Amendment.[3]  The "corresponding declaratory relief," likewise,

> should be equivalent to an injunction. . . .  A request for a declaration that a . . . statute is unconstitutional[, for example,] would qualify as "corresponding declaratory relief" because the resulting judicial directive would have the effect of "enjoining" the enforcement of the . . . statute. . . .  On the other hand, an action seeking a declaration concerning defendant's conduct that *appears designed simply to lay the basis for a damage award rather than injunctive relief would not qualify under Rule 23(b)(2)*. . . .  Monetary relief that may be deemed equitable in nature or ancillary to the declaratory relief may be allowed, however.

7AA C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure*, § 1775 at 58-60 (3d ed. 2005) (emphasis added; footnotes and citations omitted); *see also* Rubenstein, *Newberg*

---

[3] The *Wal-Mart* Court questioned whether "even a 'predominating request'" for injunctive relief would support Rule 23(b)(2) certification if accompanied by a claim for damages, but left open the possibility that some incidental monetary relief might still be allowed in such an action.  131 S. Ct. at 2559-60.

*on Class Actions* § 4:31, 112-13 ("In short, declaratory relief under (b)(2) cannot simply turn a (b)(3) damages action into an action under (b)(2).").

¶98    Actions for money damages are the province of Rule 23(b)(3), which imposes additional requirements for notice and opt-out rights for the class members and requires findings that a class action would be superior to individual litigation and that common questions predominate over individual ones. *See Mattson III*, ¶ 19. "If recovery of damages is at the heart of the complaint, individual class members must have a chance to opt out of the class and go it alone – or not at all – without being bound by the class judgment." *Richards*, 453 F.3d at 530. "Thus, when the relief sought would simply serve as a foundation for a damages award, . . . or when the requested injunctive or declaratory relief merely attempts to reframe a damages claim, . . . the class may not be certified pursuant to Rule 23(b)(2)." *Richards*, 453 F.3d at 530 (citations omitted); *see also Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 499 (7th Cir. 2012) (Rule 23(b)(2) certification improper when remedial order merely establishes a system for eventually providing individualized relief); *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 979 (5th Cir. 2000) (declaratory relief must, as a practical matter, serve to afford injunctive relief or serve as a basis for later injunctive relief; certification under Rule 23(b)(2) improper where, "for most of the class, damages will be the only meaningful relief obtained"); *DWFII Corp. v. St. Farm Mut. Auto. Ins. Co.*, 271 F.R.D. 676, 685 (S.D. Fla. 2010) (declining to certify Rule 23(b)(2) class where alleged damages for State Farm's underpayment or nonpayment of reimbursements for health care services of its insureds based on State Farm's application of

the Centers for Medicare and Medicaid Services' National Correct Coding Initiative was "not a group injury requiring a group remedy" but "would require individual resolution of [factual] questions relevant to each claim for reimbursement"); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 561 (C.D. Cal. 2012) (denying Rule 23(b)(2) class certification where injunctive relief to create a reimbursement program "would merely 'initiate a process' through which individual class members could receive a monetary award" rather than grant classwide relief in the form of an injunction); *Mogel v. UNUM Life Ins. Co. of Am.*, 646 F. Supp. 2d 177, 184 (D. Mass. 2009) (despite satisfying all requirements of Rule 23(a), class certification denied under Rule 23(b) because "[a]ny harm suffered as a result" of insurer's alleged ERISA violations "has already occurred" and class members' primary objective was to obtain monetary relief).

¶99    The Court's brief attempt to distinguish this authority (Opinion, ¶ 69) falls short. The first certified class claim requires the District Court to declare whether the CCPR violates Montana's unfair claims settlement practices laws. Opinion, ¶ 64. If the answer is "yes," the District Court is to "issue a mandatory injunction requiring Allstate to give all class members notice of the right to re-open and re-adjust their individual claims." Then, if the class trial determines that Allstate engaged in fraudulent or malicious conduct, "the trier of fact in the *later individual cases* may determine the amount of individual punitive damages to be awarded *if individual actual damages are also established*." Opinion, ¶ 64 (emphases added). The Court expressly acknowledges, as a basis for its commonality holding, that "resolving whether the CCPR violates the UTPA would set the stage for later individual

67

trials." Opinion, ¶ 49. Thus, the decision today makes clear that the class trial is to occur for the purpose of establishing a foundation for individualized damage awards. Simply stated, this is not a Rule 23(b)(2) class.

¶100 The difficulty here is that the District Court already considered and denied, as part of a comprehensive, sixty-page order prior to Jacobsen's first appeal, his motion to certify a class under M. R. Civ. P. 23(b)(3). Jacobsen did not appeal that ruling following its issuance in 2005 and would be barred from now challenging the District Court's determination. *Bragg v. McLaughlin*, 1999 MT 320, ¶ 21, 297 Mont. 282, 993 P.2d 662 (overruled on other grounds, *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 16, 338 Mont. 423, 166 P.3d 451). Nor did Jacobsen cross-appeal the District Court's refusal, in its January 30, 2012, class certification order, to address his "fall-back Rule 23(b)(3) theory" because of the "cursory nature of Plaintiff's briefing and logical inconsistency of this theory with his primary Rule 23(b)(2) theory." He similarly fails on appeal to develop his arguments or to address the separate Rule 23(b)(3) requirements of predominance and superiority.

¶101 In conclusion, because Jacobsen cannot establish all of the requirements of the rule, I dissent from the Court's decision to uphold Rule 23(b)(2) class certification.


/S/ BETH BAKER


Justice Jim Rice joins in the dissenting Opinion of Justice Baker.


/S/ JIM RICE

68

Justice Laurie McKinnon, dissenting.

¶102   I dissent from the Court's decision.  As explained below, the case the Court decides today is not the case that was presented to us.  This class action, as argued by Jacobsen and certified by the District Court, is one for declaratory relief under the Uniform Declaratory Judgments Act (Title 27, chapter 8, MCA).  The class remedies are a declaratory judgment, an injunction, punitive damages, and attorney's fees.  The injunction gives class members the option of returning to the position they were in when they initially filed their claims, i.e., before Allstate applied the CCPR to them.  This is *not* a class action to determine liability for damages under the Unfair Trade Practices Act (UTPA; Title 33, chapter 18, MCA).  Jacobsen did not frame the class claim pursuant to Rule 23(b)(2) as one that would lead to compensatory damages; to the contrary, he conceded from the outset that some of the putative class members may have suffered no individual harm from Allstate's use of the CCPR.  All he requested was an injunction "to prohibit Allstate from using its CCPR program, to re-open improperly settled claims, and for disgorgement of illicit profits from the unlawful program."  The District Court, correspondingly, did not certify any claims or remedies under the UTPA.

¶103   This Court, however, proceeds to repackage this case as a UTPA action.  One facet of Allstate's liability is to be decided in a class trial, after which further liability determinations and assessments of damages are to be made in ensuing individual trials.  I disagree with this

69

sua sponte reworking of the case. Aside from being improper appellate practice, the scheme the Court has devised here distorts the rules for certifying a class under Rule 23(b)(2) and infringes class members' due process rights.

¶104 The ensuing discussion relates primarily to my disagreement with the Court's remaking of the case and the Court's approach to Rule 23(b)(2) certification. However, like Justice Baker, I also harbor reservations about whether the threshold requirements of Rule 23(a) have been met. I address those concerns at the end of this Dissent.

## I. The District Court's Construction of the Class Claim and Remedies

¶105 Jacobsen's Fourth Amended Complaint is far from a model of clarity. In fact, the District Court noted in its class-certification Order that there is "considerable pleading imprecision on [the] face" of the complaint. This Court, likewise, acknowledges that "Jacobsen's requested relief and alleged bases for damages are not entirely clear." Opinion, ¶ 40.

¶106 Faced with this pleading imprecision, the District Court liberally "construed" Jacobsen's Fourth Amended Complaint and his arguments supporting class certification so as to arrive at class claims and remedies that could "minimally" satisfy the criteria of Rule 23. Jacobsen certainly benefitted from the District Court's efforts in this regard, and it must be noted that, just as he has not contested other aspects of the District Court's decision (*see e.g.* Opinion, ¶ 62, ¶ 63 n. 9), Jacobsen also has not cross-appealed from the District Court's ultimate determination of the class claim and the class remedies.

¶107    The District Court perceived both individual and class claims in the Fourth Amended

Complaint.  In identifying the class claim, the District Court found as follows:

> Separate and apart from the individual claims asserted in this case, the court
> construes the substantive essence of Plaintiff's asserted class claim to be that,
> irrespective of individual outcomes, the unrepresented segment adjustment
> practices specified in Allstate's *CCPR Implementation Manual (Tort States)*
> (hereinafter Casualty CCPR) constitute a common pattern and practice in
> violation of §§ 33-18-201(1) and (6), MCA, as generally applied to the class as
> a whole, thereby resulting in indivisible harm to the class as a whole by
> operation of Allstate's own zero-sum economic theory and the resulting
> inversely proportional relationship between Allstate's profit increases and
> corresponding decreases in the total amount of compensation paid to the class
> of unrepresented claimants as a whole.

A critical term in this construction of the class claim is "indivisible harm to the class as a

whole."  This language is important because, as explained below, it reflects the limited claim

and remedies that the District Court had in mind, and because this Court's revision of the

District Court's language dramatically alters the nature of this case.

¶108    Jacobsen requested class certification pursuant to Rule 23(b)(2).  " 'The key to the

[Rule 23](b)(2) class is the indivisible nature of the injunctive or declaratory remedy

warranted—the notion that the conduct is such that it can be enjoined or declared unlawful

only as to all of the class members or as to none of them.' " *Diaz v. Blue Cross & Blue

Shield of Mont.*, 2011 MT 322, ¶ 42, 363 Mont. 151, 267 P.3d 756 (brackets in original)

(quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S. Ct. 2541, 2557 (2011)).  As

the Supreme Court further explained:

> In other words, Rule 23(b)(2) applies only when a single injunction or
> declaratory judgment would provide relief to each member of the class.  It
> does not authorize class certification when each individual class member

71

would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Wal-Mart*, 131 S. Ct. at 2557 (emphasis in original).

¶109 The District Court construed Jacobsen's substantive arguments mindful of these principles, correctly recognizing that Rule 23(b)(2) requires an indivisible remedy and does not permit class certification for purposes of individualized awards of monetary damages. The court construed Jacobsen's requested class relief under Rule 23(b)(2) to consist of "a claim for class-wide declaratory, injunctive, and incidental monetary relief (equitable disgorgement and punitive damages)." The District Court declined to certify the equitable disgorgement remedy on the ground that it was cumulative to the injunctive relief, but the court otherwise certified the class relief Jacobsen sought. Specifically, the District Court certified the following claim and remedies:

    (2)    <u>Class Action Claim</u>. The certified class claim is that:

        (A)    the Casualty CCPR's unrepresented segment adjusting practices are a common pattern and practice in violation of §§ 33-18-201(1) and (6), MCA, as generally applied to the class of unrepresented claimants as a whole;

        (B)    Allstate's common, systematic use of this pattern and practice in Montana caused indivisible harm to the class as a whole by operation of its zero-sum economic theory and the resulting inversely proportional relationship between Allstate profit increases and corresponding decreases in the total amount of compensation paid to the class of unrepresented claimants as a whole; and

        (C)    Allstate acted with "actual malice," as defined by § 27-1-221(2), MCA, by intentionally, deliberately, and consciously creating

72

and disregarding a high probability that the net effect of its Casualty CCPR's unrepresented segment practices would result in net settlement payouts to the class as a whole less than the net amount previously sufficient to fully and fair[ly] settle unrepresented claims under Montana law;

(3) Class Action Remedies. The certified class remedies available as a matter of law on proof of the certified class claim are:

(A) declaratory judgment adjudicating the constituent assertions of the certified class claim;

(B) mandatory injunction requiring Allstate to:

(1) give all class members court-approved notice of the right and opportunity to obtain re-opening and re-adjustment of their individual claims by timely returning a proof of claim form; and

(2) re-open and re-adjust each individual claim upon receipt of a timely filed proof of claim;

(C) class-wide punitive damages pursuant to §§ 27-1-220 and 27-1-221(2), MCA (actual malice), predicated on the above-referenced class-wide conduct; and

(D) common fund recovery of class action attorney fees and costs upon a class-wide punitive damages award[.]

¶110 With respect to establishing the "indivisible harm" asserted in the Class Action Claim, the District Court explained that

the occurrence and extent of the actual harm common to the class as a whole is ascertainable and at least generally measurable on an indivisible class-wide basis without consideration of individual outcomes by comparative analysis of relevant industry performance data and internal Allstate performance data.

Jacobsen's theory is that if Allstate outperformed industry norms (in terms of profits and

73

reduced payouts) due to the CCPR, then the class members were indivisibly harmed.[1]

¶111   Accordingly, setting aside the punitive damages and the common fund recovery,[2] the District Court certified only two class remedies.  The first remedy is a declaration that the CCPR constitutes a per se prohibited claim settlement practice under § 33-18-201(1) and (6), MCA.[3]  The class trial must determine, therefore, that applying the CCPR was unlawful as to all class members or, conversely, to no class members.  In a sense, this is analogous to deciding a facial challenge to a statute:  to prevail on such a challenge, the plaintiff must show that "no set of circumstances exists under which the [statute] would be valid, *i.e.*, that the law is unconstitutional in all of its applications."  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, 128 S. Ct. 1184, 1190 (2008) (internal quotation marks omitted); *see also Caldwell v. MACo Workers' Comp. Trust*, 2011 MT 162, ¶ 69, 361 Mont. 140, 256 P.3d 923 (Baker & Rice, JJ., dissenting).  That is, in essence, what the certified class claim asserts regarding the CCPR:  that no set of circumstances exists under which the CCPR would be valid.  The CCPR is unlawful in all of its applications—as the theory goes—because the "attorney economics script" misrepresents facts and because the "fast

---

[1] Jacobsen proffered several studies of Allstate's performance.  One such study—a 2007 report from the Consumer Federation of America—asserts that Allstate has been able "to outperform the industry by 20 percent" due to the CCPR.

[2] I agree with the Court that the certification of classwide punitive damages was inappropriate.  Not only would such an award implicate due process, Opinion, ¶¶ 77-78, but the District Court did not certify compensatory damages as a class remedy and, thus, there can be no award of classwide punitive damages, *see Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 67, 351 Mont. 464, 215 P.3d 649.

[3] "A person may not . . . (1) misrepresent pertinent facts or insurance policy provisions relating to coverages at issue; . . . [or] (6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; . . . ."  Section

track" system and the "9-step process" are inherently incompatible with good-faith effectuation of fair and equitable settlements. If the class prevails on this claim, then the second remedy the District Court certified is an injunction requiring Allstate to allow each class member to return to square one, i.e., go back to the point when his or her claim was first filed, before Allstate applied the CCPR.

¶112 Importantly, the District Court did not certify any class claim or remedies under the UTPA itself. The UTPA recognizes "an independent cause of action [by an insured or a third-party claimant] against an insurer for actual damages caused by the insurer's violation of subsection (1), (4), (5), (6), (9), or (13) of 33-18-201." Section 33-18-242(1), MCA. In such action, "the court or jury may award such damages as were proximately caused by the violation of subsection (1), (4), (5), (6), (9), or (13) of 33-18-201," as well as "[e]xemplary damages." Section 33-18-242(4), MCA. That is not the nature of the class action certified by the District Court here. The parties' arguments in the District Court, and the District Court's ensuing analysis in its Order, confirm this conclusion. They also provide insight into the precise nature of the class claim, as follows.

¶113 First, in his briefs supporting class certification, Jacobsen asserted that this case is "squarely governed" by *Ferguson v. Safeco Ins. Co. of Am.*, 2008 MT 109, 342 Mont. 380, 180 P.3d 1164. Of relevance, he quoted the following passage from that decision:

> The challenge here is not to an error in Safeco's application of the "made-whole" rule to any given insured. Rather, this case challenges the procedures of a program of subrogation which systematically deprives all class

33-18-201, MCA.

75

members of any consideration of their "made-whole" rights. Thus, as Ferguson points out in her brief on appeal, her class claims do not seek a determination of entitlements for each class member and the payment of damages; rather, her class claims seek a declaratory ruling that will be enforced to compel Safeco to follow the legal standard in its subrogation program.

*Ferguson*, ¶ 34. Jacobsen indicated that he was seeking the same sort of relief: a declaratory ruling that will be enforced to compel Allstate to stop using the CCPR. He further asserted that the "vehicle for class relief" under his Rule 23(b)(2) theory is an injunction requiring Allstate either to re-open and re-adjust the claims, or to disgorge the profits it made as a result of the CCPR. (As noted, the District Court chose the former.) Jacobsen did not assert any entitlement to compensatory damages for class members.

¶114  Second, in its brief seeking dismissal of the class claim, Allstate argued that Jacobsen had compromised the interests of class members by not seeking compensatory damages on their behalf. In response, Jacobsen argued that he was not required to assert claims for compensatory damages. He cited *Lebrilla v. Farmers Group, Inc.*, 16 Cal. Rptr. 3d 25 (Cal. App. 4th Dist. 2004), for the proposition that there is no rule requiring a class representative to seek certification of all causes of action available to every member of the class. *See Lebrilla*, 16 Cal. Rptr. 3d at 40 ("Farmers is essentially asking us to hold a class cannot be certified anytime the class representative fails to seek certification of fewer than all causes of action. Of course there is currently no such rule.").

¶115  Third, in its Order, the District Court recognized that there are "case-specific issues peculiar to individual claims" here. The court noted, for example, that whether liability for a

76

given claim had become "reasonably clear," *see* § 33-18-201(6), MCA, is "a highly individualized, case-specific criteri[on]."[4] The court noted the same thing with regard to "whether and to what extent individual class members ultimately received fair settlements." The existence of such factual variations among claimants subjected to the CCPR would preclude classwide adjudication of Allstate's liability for damages under § 33-18-242(1), MCA. But the District Court did not construe this case as such an action. The court instead construed Jacobsen's class claim to be that Allstate's use of the CCPR violated § 33-18-201(1) and (6), MCA, "irrespective of outcomes in individual cases." The court observed that "the class-wide matter at issue is the indivisible net effect of the Casualty CCPR unrepresented segment practices on the class as a whole, irrespective of individual outcomes." Accordingly, setting aside the statute's case-specific criteria, the District Court reasoned that "§§ 33-18-201(1) and (6), MCA, essentially require Allstate to promptly, accurately, truthfully, fairly, and in good faith adjust bodily injury and property damage claims." The court construed the class claim to be that Allstate's use of the CCPR violates these general principles of § 33-18-201(1) and (6), MCA.

¶116 Fourth, the District Court recognized that Rule 23(b)(2) does not authorize class certification when each class member would be entitled to an individualized award of monetary damages. The court thus framed "the dispositive Rule 23(b)(2) issues" as "(1) whether the asserted class claim seeks permissible forms of injunctive relief that will

---

[4] Again, § 33-18-201(6), MCA, prohibits an insurer from "neglect[ing] to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become

benefit the class as a whole and (2) whether as a matter of law the requested forms of monetary relief, however characterized, are permissible forms of Rule 23(b)(2) relief incidental to the predicate declaratory and injunctive relief from which they flow." I discuss the meaning of "incidental" monetary relief below. *See* ¶ 134, *infra*. For present purposes, it suffices to note that it does not include individual claims for compensatory damages. The District Court expressly rejected Allstate's contention that the class action here would "serve only to facilitate the award of damages."

¶117  Finally, consistent with the foregoing points, the District Court cited Title 27, chapter 8, MCA (the Uniform Declaratory Judgments Act), as authority for the first certified class remedy and Title 27, chapter 19, MCA (authorizing injunctions), as authority for the second certified class remedy. The court did not rely on § 33-18-242, MCA, as authority for the class claim or the class remedy. In fact, the District Court rejected the proposition that Jacobsen's class action is one that seeks "damages" under the UTPA:

> Here, as construed by the court, Plaintiff's asserted UTPA-based class claim neither constitutes nor is tantamount to a claim for compensatory damages – it merely encompasses first and third-party . . . claims for declaratory relief and related equitable and punitive relief predicated on asserted class-wide violations of §§ 33-18-201(1) and (6), MCA.

Allstate had pointed out in its brief opposing class certification that § 33-18-242, MCA, specifically authorizes *damages*—compensatory and punitive—for an insurer's violation of the UTPA, not the *equitable remedies* that Jacobsen sought. *See* § 33-18-242(4), MCA. Allstate argued, therefore, that injunctive relief was not available to remedy the asserted

---

reasonably clear."

78

classwide violations of § 33-18-201(1) and (6), MCA. The District Court, however, interpreted our decision in *Ferguson* as approving a class action "distinct from an independent UTPA claim for damages under §§ 33-18-242(1) and (3), MCA." The court concluded that this case was such an action, i.e., "a UTPA-based Rule 23(b)(2) class action claim for declaratory and derivative non-compensatory injunctive relief."

¶118 In sum, the District Court attempted to construe Jacobsen's filings to assert a class claim and class remedies that "minimally" satisfy the criteria of Rule 23(b)(2). The court recognized that Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class, and that Rule 23(b)(2) does not authorize class certification when each class member would be entitled to an individualized award of monetary damages. *Diaz*, ¶ 42; *Wal-Mart*, 131 S. Ct. at 2557. Construing Jacobsen's filings, the District Court found that his "asserted UTPA-based class claim neither constitutes nor is tantamount to a claim for compensatory damages"; rather, what Jacobsen was asserting was "a UTPA-based Rule 23(b)(2) class action claim for declaratory and derivative non-compensatory injunctive relief." The District Court observed that this claim is "distinct from an independent UTPA claim for damages under §§ 33-18-242(1) and (3), MCA."

¶119 The class claim asserts what is in essence a facial challenge to the CCPR, alleging that the CCPR is per se unlawful as to all unrepresented claimants and that Allstate's use of the CCPR caused "indivisible harm to the class as a whole" as shown "by comparative analysis of relevant industry performance data and internal Allstate performance data." Jacobsen explained in the District Court that the claim "challenges Allstate's systematic attempt to

settle claims below fair value." In his view, "Allstate systematically promoted bad-faith adjusting and sought to undervalue claims." Whether class members' claims were, in fact, undervalued or settled unfairly is not the issue; the challenge is to Allstate's alleged "systematic attempt" to settle claims below fair value. As Jacobsen further explains this theory in his brief on appeal, Allstate used "settlement guidelines below the level needed to fairly compensate claimants" which caused class members "indivisible legal injury"; i.e., "[a]ll members suffered legal injury through the use of a dishonest system, whether or not the monetary value of each settlement ultimately was unfair."

¶120 Jacobsen and the District Court employ § 33-18-201(1) and (6), MCA, as the legal standard for judging the CCPR's validity, but without consideration of the case-specific criteria contained in the statute (such as whether liability in a particular class member's claim was "reasonably clear"). Under this approach, the issues to be determined at the class trial are: whether the "attorney economics script" misrepresents facts; whether the "fast track" system and the "9-step process" are inherently incompatible with good-faith effectuation of prompt, fair, and equitable settlements; and whether use of these programs caused indivisible harm to the class as a whole. If using the CCPR enabled Allstate to outperform the industry, and if the CCPR is facially unlawful, then class members suffered an indivisible legal injury. The proper remedy for this injury, the District Court determined, is injunctive relief "restoring interested class members and Allstate to the pre-settlement status quo." This is the class action that the District Court certified and that Allstate appealed to this Court.

## II. This Court's Remaking of the Class Claim and Remedies

¶121 The Court, on its own initiative, fundamentally revises this framework. The Court begins with the erroneous premise that the District Court formulated the class claim using the "indivisible harm to the class as a whole" language "so as to justify the entry of a class-wide punitive damages award." Opinion, ¶ 47. That is simply incorrect. The District Court used this language because indivisibility is what is needed to certify a class under Rule 23(b)(2), *Diaz*, ¶ 42; *Wal-Mart*, 131 S. Ct. at 2557, and because that is what Jacobsen had asserted in his pleadings and arguments.

¶122 Nevertheless, based on its mistaken assumption about the District Court's intent, the Court proceeds to revise the class claim as follows (underlining added):

> **As originally certified:** "(B) Allstate's common, systematic use of this pattern and practice in Montana <u>caused indivisible harm to the class as a whole</u> by operation of its zero-sum economic theory and the resulting inversely proportional relationship between Allstate profit increases and corresponding decreases in the total amount of compensation paid to the class of unrepresented claimants as a whole."

> **As revised by the Court:** "(B) Allstate's common, systematic use of this pattern and practice in Montana <u>resulted in damages to the members of the class</u> by operation of its zero-sum economic theory and the resulting inversely proportional relationship between Allstate profit increases and corresponding decreases in the total amount of compensation paid to the class of unrepresented claimants as a whole." Opinion, ¶ 47.

The Court then, on its own initiative, augments the relief available to the class members. In addition to the declaratory and injunctive remedies certified by the District Court, the Court announces that the class trial will "set the stage" for "individual monetary relief" in "later individual trials." Opinion, ¶¶ 43, 46, 49, 90. The Court explains that the class trial will determine Allstate's liability for a UTPA violation, and the later individual trials will

determine class members' "compensatory damages." Opinion, ¶¶ 49, 57, 66, 90. The Court also announces that class members may seek relief for both "economic" and "emotional" injury, Opinion, ¶ 55—something that Jacobsen never asserted, and that the District Court never certified, in the Rule 23(b)(2) class claim and remedies.

¶123 This gratuitous reworking of the case is in direct contradiction to the District Court's certification of this case as a class action "distinct from an independent UTPA claim for damages under §§ 33-18-242(1) and (3), MCA." It also contradicts the District Court's statement that, "as construed by the court, Plaintiff's asserted UTPA-based class claim neither constitutes nor is tantamount to a claim for compensatory damages." In fact, the only monetary relief that Jacobsen discussed in his argument supporting class certification was "disgorgement of illicit profits from the unlawful [CCPR] program." Acknowledging the limitations of Rule 23(b)(2) certification, Jacobsen did not propose that the class action would result in monetary damages under § 33-18-242, MCA. His theory, rather, was unjust enrichment—that Allstate had unjustly enriched itself at the expense of class members by using patently unlawful claim settlement practices, as evidenced by Allstate's ability to outperform the industry. The District Court accepted this theory, but found that an injunction allowing class members to return to square one, rather than an injunction requiring Allstate to "disgorge illicit profits," would be the proper remedy. The Court thus errs in reframing Jacobsen's class claim as a springboard for future individual trials on damages. The class claim, as construed and certified by the District Court, does not determine whether Allstate is liable for actual damages under the UTPA. The District Court did not certify a

class action under § 33-18-242, MCA; it certified a class action under Title 27, chapters 8 and 19, MCA.

¶124   "[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *NASA v. Nelson*, 562 U.S. ___, 131 S. Ct. 746, 756 n. 10 (2011) (internal quotation marks omitted).  The Court's choice to remake this class action disregards this fundamental premise of our adversarial system.  The Court's citation to § 3-2-204(1), MCA—*see* Opinion, ¶ 47— is clearly misplaced.  That provision simply grants this Court authority to "affirm, reverse, or modify any judgment or order appealed from."  Section 3-2-204(1), MCA.  It does not give this Court authority to fundamentally remake the case to state claims and remedies that the appellee neither asserted in the district court nor raised in a cross-appeal before this Court.  Ironically, the Court uses the arguments of the *appellant* (Allstate) opposing class certification as justification to revise the class claim and remedies in a way that exposes the appellant to significantly greater liability.

### III.  Flaws in the Court's Remade Class Claim and Remedies

¶125   Besides the questionable procedural aspect of the Court's action, the remade class claim and class remedies are flawed for additional reasons.

¶126   First, as an initial matter, the Court's Opinion is internally inconsistent.  Pursuant to the District Court's Order, the class is seeking a declaratory judgment as to three issues: (A) that the CCPR violates § 33-18-201(1) and (6), MCA, as applied to the class of unrepresented claimants as a whole; (B) that Allstate's systematic use of the CCPR "caused

83

indivisible harm to the class as a whole"; and (C) that Allstate acted with actual malice. *See* ¶ 109, *supra*. Now, under the Court's rewording of issue (B), the class is seeking a declaratory judgment that Allstate's systematic use of the CCPR "resulted in damages to the members of the class." Opinion, ¶ 47. At the same time, however, the Court states repeatedly that whether class members suffered damages is to be determined in later individual trials. *See* Opinion, ¶ 46 ("Damages claims may be determined in later individual trials after [the] class trial . . . ."), ¶ 57 (the specifics of a class member's injuries will "be aired in a later, individual suit for damages"), ¶ 66 ("The later individual trials would allow Allstate to present evidence that individual class members suffered no injury."), ¶ 78 ("Here, adjudicating the requested injunctive and declaratory relief would not involve a . . . determination of compensatory damages."), ¶ 90 ("the class members would be entitled to only the compensatory damages they can prove in the individual cases"). Our Opinion leaves the District Court and the parties guessing as to how the fact-finder in the class trial is to determine whether Allstate's use of the CCPR "resulted in damages to the members of the class" when, under this Court's decision, damages to the members of the class are to be determined in "later individual trials" at which Allstate may "present evidence that individual class members suffered no injury." The Court offers no explanation for this incongruity—an incongruity that arose out of the Court's decision to insert "damages" into the class claim.

¶127 Second, the question whether Allstate's use of the CCPR "resulted in damages to the members of the class" cannot be answered on a classwide basis in any event. A claimant is

84

not damaged under § 33-18-201(6), MCA, unless the insurer's liability for the claim was "reasonably clear." A claimant is not damaged under § 33-18-201(1), MCA, unless the misrepresented facts were "pertinent" to coverages "at issue." A claimant is not entitled to damages under the UTPA unless the alleged damages were "proximately caused" by the UTPA violation. Section 33-18-242(4), MCA. A claimant is not entitled to damages under the UTPA "if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim." Section 33-18-242(5), MCA. These are all highly individualized, case-specific criteria.

¶128 Third, under the legal authority discussed above and in Justice Baker's Dissent, class certification under Rule 23(b)(2) is improper where the requested injunctive or declaratory relief would simply serve as a basis for eventually providing monetary relief. Dissent, ¶¶ 97-99; *Wal-Mart*, 131 S. Ct. at 2557 ("[Rule 23(b)(2)] does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."). I agree with Justice Baker's analysis and conclusion that the Rule 23(b)(2) class trial which the Court conceives in today's Opinion is for the purpose of laying a foundation for individualized awards of monetary damages. Dissent, ¶ 99. This approach is wholly inconsistent with Rule 23(b)(2)'s history and purpose.[5] As the Supreme Court explained:

---

[5] Prior to 1962, a form of class action was permitted in Montana under § 93-2821, RCM (1947). This statute, originally enacted by the first territorial Legislature in 1864 as part of the Bannack Statutes, simply provided that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before

Because Rule 23 "stems from equity practice" that predated its codification, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997), in determining its meaning we have previously looked to the historical models on which the Rule was based, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841-845 (1999). As we observed in *Amchem,* "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of what (b)(2) is meant to capture. 521 U.S., at 614. In particular, the Rule reflects a series of decisions involving challenges to racial segregation—conduct that was remedied by a single classwide order. In none of the cases cited by the Advisory Committee as examples of (b)(2)'s antecedents did the plaintiffs combine any claim for individualized relief with their classwide injunction.

*Wal-Mart,* 131 S. Ct. at 2557-58 (brackets in original).

¶129   Fourth, using class certification under Rule 23(b)(2) to "set the stage" for later individual trials on compensatory damages, Opinion, ¶¶ 46, 49, 90, presents due process problems. Classes certified under Rule 23(b)(1) and (b)(2) are "mandatory classes:  The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action." *Wal-Mart,* 131 S. Ct. at 2558; *see also* M. R. Civ. P. 23(c)(2). Rule 23(b)(3), on the other hand,

the court, one or more may sue or defend for the benefit of all." In 1961, the Legislature repealed § 93-2821, RCM, and various other statutes and replaced them with the Montana Rules of Civil Procedure, which took effect on January 1, 1962. *See* Laws of Montana, 1961, ch. 13. Montana's Rule 23 was identical in all material respects to then-existing Rule 23 of the Federal Rules of Civil Procedure. In 1966, several of the federal rules were amended, including Rule 23. *See* 39 F.R.D. 69, 94-98 (1966). Correspondingly, this Court issued an order in 1967 adopting amendments to the Montana Rules of Civil Procedure. *In re Montana Rules of Civil Procedure*, No. 10750-7 (Sep. 29, 1967, filed Oct. 10, 1967). As noted in our order, the amendments to the Montana Rules were "patterned after either the 1963 or the 1966 amendments to the Federal Rules," the rationale being that it "would be desirable to maintain uniformity with the Federal Rules insofar as they are suitable to Montana practice." In this regard, we adopted Federal Rule 23 in its entirety. In light of this background, the history of Federal Rule 23 is directly applicable and relevant to Montana Rule 23. *See also Sieglock v. Burlington N. Santa Fe Ry. Co.*, 2003 MT 355, ¶ 10, 319 Mont. 8, 81 P.3d 495 (because Montana Rule 23 is identical to federal Rule 23, "federal authority is instructive on the issue of class certification").

allows class certification in a much wider set of circumstances but with greater procedural protections. Its only prerequisites are that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). And unlike (b)(1) and (b)(2) classes, the (b)(3) class is not mandatory; class members are entitled to receive "the best notice that is practicable under the circumstances" and to withdraw from the class at their option. See Rule 23(c)(2)(B).

*Wal-Mart*, 131 S. Ct. at 2558; *see also* M. R. Civ. P. 23(b)(3), (c)(2)(B).

¶130 The absence of such procedural protections in a class action predominantly for monetary damages violates due process. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).[6] According to the Supreme Court,

[t]he procedural protections attending the (b)(3) class—predominance, superiority, mandatory notice, and the right to opt out—are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary *to a (b)(2) class*. When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident. But with respect to each class member's individualized claim for money, that is not so—which is precisely why (b)(3) requires the judge to make findings about predominance and superiority before allowing the class. Similarly, (b)(2) does not require that class members be given notice and opt-out rights, presumably because it is thought (rightly or wrongly) that notice has no purpose when the class is mandatory, and that depriving people of their right to sue in this manner complies with the Due Process Clause. In the context of a class action

---

[6] *Phillips Petroleum* held that an absent plaintiff is entitled to procedural due process protection before he may be bound concerning a claim for money damages or similar relief at law. The plaintiff must be given "notice," "an opportunity to be heard and participate in the litigation," and "an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." 472 U.S. at 811-12, 105 S. Ct. at 2974.

predominantly for money damages we have held that absence of notice and opt-out violates due process. See *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). While we have never held that to be so where the monetary claims do not predominate, the serious possibility that it may be so provides an additional reason not to read Rule 23(b)(2) to include the monetary claims here.

*Wal-Mart*, 131 S. Ct. at 2558-59 (emphasis in original).

¶131   That is precisely the problem the Court has created by transforming this case into a class action under § 33-18-242, MCA. Apparently, Allstate's liability to class members under § 33-18-242(1), MCA, will be determined in a class trial, which will "set the stage" for later individual trials on damages under § 33-18-242(4), MCA. Opinion, ¶¶ 49, 90. Because this class action is certified under Rule 23(b)(2), the class is mandatory and the predominance, superiority, notice, and opt-out protections of Rule 23(b)(3) do not apply. If Jacobsen loses on the merits, then the class members' individual claims for damages will be seriously compromised, if not totally barred. *See Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 820 (7th Cir. 2011). This approach of "depriving people of their right to sue" by approving a mandatory class absent notice and opt-out rights violates the Due Process Clause. *Wal-Mart*, 131 S. Ct. at 2559.

¶132   The fact that the class trial may also result in injunctive relief (in addition to the compensatory damages the Court envisions in later individualized trials), Opinion, ¶ 90, does not alter this conclusion. Even if injunctive relief is the "predominant" remedy,

> [t]he mere "predominance" of a proper (b)(2) injunctive claim does nothing to justify elimination of Rule 23(b)(3)'s procedural protections: It neither establishes the superiority of *class* adjudication over *individual* adjudication nor cures the notice and opt-out problems. We fail to see why the Rule should

88

> be read to nullify these protections whenever a plaintiff class, at its option, combines its monetary claims with a request—even a "predominating request"—for an injunction.

*Wal-Mart*, 131 S. Ct. at 2559 (emphases in original); *see also Ellis*, 657 F.3d at 986-87.

¶133   For all of the foregoing reasons, the Court errs in remaking this class action into one that determines liability for damages under § 33-18-242, MCA.   Before concluding this discussion, it is necessary to address *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir. 2012), upon which the Court relies heavily.   *See* Opinion, ¶¶ 41, 42, 43, 45, 46, 57, 66.   The plaintiffs in that case sought certification, under Rule 23(b)(2), to determine whether Merrill Lynch was engaged in practices that had a disparate impact on members of the class in violation of federal antidiscrimination law, and to provide corresponding injunctive relief.   *McReynolds*, 672 F.3d at 483.   The plaintiffs also sought certification, under Rule 23(b)(3), for compensatory and punitive damages; however, such certification was not at issue on appeal.   *McReynolds*, 672 F.3d at 483.   The issues were whether the plaintiffs could obtain interlocutory review of the district court's certification decision and whether, under *Wal-Mart*, Merrill Lynch's delegation of decision-making authority to local managers precluded certification of a classwide claim for injunctive relief. *McReynolds*, 672 F.3d at 484-91.   The Court of Appeals (speaking through Judge Posner) noted that "the only issue of relief at present is whether to allow the plaintiffs to seek class-wide injunctive relief" under Rule 23(b)(2).   *McReynolds*, 672 F.3d at 491.   He concluded that certification for this purpose was appropriate.   *McReynolds*, 672 F.3d at 491-92.   Then, near the end of the opinion, Judge Posner opined that if the classwide issue were ultimately

resolved in the plaintiffs' favor (i.e., with a finding that Merrill Lynch's policies cause racial discrimination and are not justified by business necessity), then there could be hundreds of separate suits for back pay. *McReynolds*, 672 F.3d at 492. He did not hold, however, as the Court implies, that Rule 23(b)(2) may be used as an integral component of a larger damages action. Indeed, such a holding would have been inconsistent with Seventh Circuit precedent.

¶134  In *Randall*, the Court of Appeals (again speaking through Judge Posner) rejected the plaintiffs' attempt to cloak a damages action in a Rule 23(b)(2) certification. Judge Posner observed that "[c]lass action lawyers like to sue under [Rule 23(b)(2)] because it is less demanding, in a variety of ways, than Rule 23(b)(3) suits, which usually are the only available alternative. Of particular significance, plaintiffs may attempt to shoehorn damages actions into the Rule 23(b)(2) framework, depriving class members of notice and opt-out protections." *Randall*, 637 F.3d at 825 (citations and internal quotation marks omitted). Judge Posner noted that it may be permissible in a Rule 23(b)(2) action to grant monetary relief that is *incidental* to the injunctive or declaratory relief, but he cautioned that "incidental" here means "requiring only a mechanical computation," *Randall*, 637 F.3d at 825; in other words, "the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program," *Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012).[7] *See also Lemon v. Intl. Union*, 216 F.3d 577, 581 (7th Cir. 2000) (incidental damages do not depend in any significant way on

---

[7] Judge Posner, writing for the court in *Johnson*, 702 F.3d at 372, opined that *Wal-Mart* "left intact the authority to provide purely incidental monetary relief in a (b)(2) class action," but he

the intangible, subjective differences of each class member's circumstances and do not require additional hearings to resolve the disparate merits of each individual's case). Judge Posner explained in *Randall* that the plaintiffs' monetary claims for back pay were not "incidental" under this definition because

> calculating the amount of back pay to which the members of the class would be entitled if the plaintiffs prevailed would require 500 separate hearings. The monetary tail would be wagging the injunction dog. An injunction thus "would not provide 'final' relief as required by Rule 23(b)(2). An injunction is not a final remedy if it would merely lay an evidentiary foundation for subsequent determinations of liability."

637 F.3d at 826 (quoting *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 893 (7th Cir. 2011)).

¶135    *Kartman* likewise undercuts this Court's reliance on *McReynolds*. In the remade class action devised by the Court, the class trial is to determine whether Allstate violated the UTPA, and if a violation is found, then "compensatory damages" for "economic" and "emotional" injuries and "underpayment" of benefits is to be adjudicated in later individual trials. Opinion, ¶¶ 49, 55, 68, 90. In the later individual trials, Allstate may present evidence that individual class members suffered no injury. Opinion, ¶ 66. Thus, it may turn out that Allstate is liable in damages to some class members and not others. Under this scheme, "[Allstate's] liability cannot be determined on a class-wide basis, but instead requires individualized factual inquiries into the merits of each [class member's] claim." *Kartman*,

acknowledged that the Ninth Circuit has expressed doubt about this in *Ellis*, 657 F.3d at 986.

91

634 F.3d at 893. That is not a proper use of Rule 23(b)(2). Reviewing a similar scheme, the

*Kartman* court observed:

> The [district court] judge said he would use the Rule 23(b)(2) proceeding to assess State Farm's "liability" on the damages claims. Perhaps by this the judge meant that he intended to use the Rule 23(b)(2) class proceeding to adjudicate only those common issues pertaining to State Farm's liability for breach of contract and bad faith, while reserving the more claimant-specific issues—such as the calculation of damages—for subsequent individual adjudication. However, as we have explained, Rule 23(b)(2) governs class claims for final injunctive or declaratory relief and is not appropriately invoked for adjudicating common issues in an action for *damages*. A damages class may be certified under Rule 23(b)(3) and particular issues identified for resolution on a class-wide basis pursuant to Rule 23(c)(4). Or, in an appropriate case, a Rule 23(b)(2) class *and* a Rule 23(b)(3) class may be certified where there is a real basis for both damages and an equitable remedy. As we have explained, that is not the case here; neither Rule 23(b)(3) nor Rule 23(c)(4) is implicated.

*Kartman*, 634 F.3d at 895 (emphases in original, citations omitted); *see also e.g. Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 499 (7th Cir. 2012) ("a claim for class-wide injunctive and declaratory relief does not satisfy Rule 23(b)(2) if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made"). *McReynolds* did not overrule these precedents, and this Court misreads the *McReynolds* opinion in suggesting otherwise.

¶136 For the reasons noted by the Court and Justice Baker, Rule 23(b)(3) is unavailable to Jacobsen as a basis for certifying a class action. Opinion, ¶ 62; Dissent, ¶ 100. His class claim is valid, if at all, under Rule 23(b)(2) only. In this regard, setting aside my concerns about commonality, typicality, and adequacy (discussed below), the District Court construed Jacobsen's filings to assert a plausible Rule 23(b)(2) class action—one that determines

92

whether the program at issue (the CCPR) is per se invalid as to all class members, and that provides a single injunction allowing all class members (in the event the CCPR is found unlawful) to have their claims re-opened and re-adjusted. Jacobsen's class claim, the District Court found, is "a UTPA-based Rule 23(b)(2) class action claim for declaratory and derivative non-compensatory injunctive relief"; it "neither constitutes nor is tantamount to a claim for compensatory damages." Seventh Circuit precedent, including *McReynolds*, does not support our converting this Rule 23(b)(2) action for narrow injunctive relief into a broad Rule 23(b)(3) action for compensatory damages—particularly without the procedural protections that attend a Rule 23(b)(3) certification. If anything, the cases cited above repudiate this approach.

¶137 In sum, the Court's remade class claim and class remedies are, in my view: contrary to the District Court's construction of Jacobsen's claim; internally inconsistent; incapable of being determined on a classwide basis; not proper for certification under Rule 23(b)(2); and violative of class members' due process rights. For all of these reasons, I cannot join the Court's Opinion.

## IV. Rule 23(a) Requirements

¶138 As a final matter, I briefly discuss my concerns relating to the requirements of Rule 23(a).

¶139 First, I believe the Court should definitively state what standard is to be applied when assessing commonality under Rule 23(a)(2). Opinion, ¶¶ 33, 50 (declining to resolve this question). The Court, and Justice Baker in her Dissent, acknowledge confusion in our

93

caselaw regarding this issue. Despite "this Court's long history of relying on federal jurisprudence when interpreting the class certification requirements of Rule 23," *Chipman v. N.W. Healthcare Corp.*, 2012 MT 242, ¶ 52, 366 Mont. 450, 288 P.3d 193, we stated in *Mattson v. Mont. Power Co.* (*Mattson III*), 2012 MT 318, ¶ 37, 368 Mont. 1, 291 P.3d 1209, that "[t]he question arises as to whether Montana . . . should abandon its 'permissive' approach to Rule 23(a)(2)'s commonality requirement in favor of the *Wal-Mart* majority's more stringent standard." We have not yet answered that question. We have avoided the issue here, as we did in *Mattson III*, by indicating that the more stringent *Wal-Mart* standard was satisfied in any event. Opinion, ¶¶ 33, 50; *Mattson III*, ¶ 37. Yet, evaluating the propriety of the District Court's decision pursuant to *Wal-Mart*, and conducting our own exhaustive analysis under the *Wal-Mart* standard, without definitively setting forth our standard of review, emphasizes the need for us to provide direction in this area of law. Without guidance, this issue will likely be raised repeatedly in the district courts. And, absent our directive to the contrary, it is likely that district courts will continue to assess commonality under the more stringent *Wal-Mart* standard, as fewer issues are left to be raised on appeal. The District Court here analyzed the facts and law pursuant to *Wal-Mart*. The Court today has similarly conducted its analysis pursuant to *Wal-Mart*. The question still remains, however, as to whether the *Wal-Mart* standard is the controlling standard in Montana. While I understand the necessity for robust adversarial argument and briefing, as well as an appropriate factual scenario, I think litigants and the trial courts need a definitive

94

statement from this Court as to what standard is to be used. I believe the Court does the bench and bar a disservice in neglecting to address the appropriate standard to apply.

¶140 Second, I do not believe that the class claim here—neither the one certified by the District Court nor the one remade by this Court—satisfies the commonality requirement of Rule 23(a)(2). In my view, there are no questions of law or fact common to the class. Jacobsen's class claim is that the CCPR is per se invalid under subsections (1) and (6) of § 33-18-201, MCA. These two subsections, however, demand consideration of highly individualized, case-specific criteria. The District Court recognized this, but concluded that a common question of law or fact could be formulated for the class by essentially setting aside the case-specific criteria of subsections (1) and (6) and evaluating the CCPR's validity based on the general principles embodied in these two provisions. As discussed, the District Court reasoned that "§§ 33-18-201(1) and (6), MCA, essentially require Allstate to promptly, accurately, truthfully, fairly, and in good faith adjust bodily injury and property damage claims." The District Court construed the class claim to be that Allstate's use of the CCPR violates these general principles, "irrespective of individual outcomes." This Court apparently adopts the same analysis. Opinion, ¶ 40.

¶141 I question this approach of evaluating the validity of the CCPR—or any other settlement practice, for that matter—under § 33-18-201, MCA, based on certain criteria that are selectively plucked from the statute, while ignoring other criteria in the statute. It strikes me that this approach violates the cardinal rule that, "[i]n the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance

95

contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. The Legislature crafted the various subsections of § 33-18-201, MCA, to address specific settlement practices. Subsection (1) states that an insurer may not "misrepresent pertinent facts or insurance policy provisions relating to coverages at issue." Subsection (6) states that an insurer may not "neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." I do not subscribe to the view that the fact-finder in a class trial can determine whether the CCPR is per se invalid under subsections (1) and (6)—as to all class members— by simply disregarding the individualized inquiry plainly required by the statute as to such questions as whether liability had become reasonably clear, whether the allegedly misrepresented facts were pertinent to coverages at issue, and whether Allstate had a reasonable basis in law or in fact for contesting the claim or the amount of the claim (*see* § 33-18-242(5), MCA).

¶142 I do not mean to suggest that no class action is possible under § 33-18-201, MCA. I do believe, however, that the supposed common question here—whether Allstate's use of the CCPR violates § 33-18-201(1) and (6), MCA—cannot be answered for an entire class of claimants. Whether Allstate deliberately crafted the CCPR in such a way as to avoid review on a classwide basis (an allegation that surfaced in the District Court proceedings) is beside the point. Our duty here is to ascertain whether, under the criteria of § 33-18-201(1) and (6), MCA, there is a question of law or fact that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the

validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. In my view, there is no such common question, and I thus would hold that commonality, under Rule 23(a)(2), is not met.

¶143 Third, I also share Justice Baker's concerns about whether Jacobsen meets the typicality and adequacy requirements of Rule 23(a)(3) and (4). Dissent, ¶ 96 n. 2. The named plaintiff's claim will be typical of the class where there is a nexus between the injury suffered by the plaintiff and the injury suffered by the class. *McDonald v. Washington*, 261 Mont. 392, 402, 862 P.2d 1150, 1156 (1993). Such nexus normally exists where proving the named plaintiff's claim will necessarily prove all class members' claims. *McDonald*, 261 Mont. at 402, 862 P.2d at 1156.

¶144 Here, Jacobsen does not contend that the amount of his settlement was unfair or inequitable or that his claim was not promptly resolved. Section 33-18-201(6), MCA. Moreover, he cannot claim that Allstate, through the CCPR's "attorney economics script," misrepresented pertinent facts or insurance policy provisions relating to coverages at issue to Jacobsen's detriment, § 33-18-201(1), MCA, given that he actually consulted and retained counsel who assisted him with settling his claim. Jacobsen's claim was adjusted to a represented settlement. He therefore is not a member of the class, which is defined as all unrepresented claimants "whose claims were adjusted by Allstate in Montana to an unrepresented settlement since deployment" of the CCPR. Jacobsen has already had his claim re-opened and re-adjusted for payment of additional settlement amounts for his bodily injury claim. Consequently, he cannot have his claim re-opened. Further, Jacobsen no

97

longer pursues a property damage claim, which is included in the class definition, and he is a third-party claimant seeking emotional distress damages. He thus would not be representative of first-party claimants or those claimants with property damage. Lastly, Jacobsen's claims will be subject to unique defenses, not the least of which are: different statutes of limitations for first- and third-party claims; his admission that he spoke to an attorney but chose not to hire one; the basis of his emotional distress; and his desire to have an early settlement. I thus would hold that Jacobsen's claims are not typical and that he is not an adequate representative of the class under Rule 23(a)(3) and (4), respectively.

### V. Conclusion

¶145 In conclusion, I believe the Court has wrongly remade this case into an action for damages under the UTPA (§ 33-18-242, MCA) and, in so doing, has distorted the rules for certifying a class under Rule 23(b)(2) and jeopardized class members' due process rights. I further believe that the Rule 23(a) requirements of commonality, typicality, and adequacy are not met here. For all of the reasons set forth above, I respectfully dissent.


/S/ LAURIE McKINNON